SMITH, Judge.
The defendant, former husband of the plaintiff, seeks reduction of alimony due under a separation agreement previously incorporated in a final decree granting the plaintiff a divorce. The defendant relies on certain changes in his circumstances which occurred when he invested in Florida the proceeds of sale of his prior interests in certain midwest steel companies. The chancellor denied relief on the ground that the changes relied- on must have been contemplated and had not materially affected the defendant’s standard of living or financial ability. We find no error or abuse of discretion and affirm.
In November 1959 the defendant sold his one-half interest in certain midwest steel companies from which he had been receiving annual salaries of about $60,000. In December 1959 the parties executed a separation agreement in which the defendant undertook to pay the plaintiff $1,000 monthly alimony. This amount was based, among other things, upon an attached schedule listing assets held by him total-ling $626,870.[1] The plaintiff was granted a divorce on February 9, 1960, and on February 14, 1960, the defendant remarried. He petitioned for a reduction of monthly alimony in January 1964 alleging that the investment of his assets in a boat and marina business and certain rental properties in Florida had resulted in a drastic reduction in his assets and income. The chancellor denied relief upon the basis, among others, of the following findings: the defendant must have contemplated that his retirement from executive positions in the steel business would result in a decrease in his income; the defendant’s capital assets had not substantially decreased and were sufficient to enable him to continue making the agreed payments; with two Cadillac automobiles in his family and a 57-foot Chris Craft at his main disposal the defendant was living well and recently had given his present wife a gain of about $30,000 which he realized on the sale of his residence in Ft. Lauder-dale; the agreed payments were not excessive, the plaintiff’s needs had not diminished and she could not enjoy a higher standard of living than that enjoyed by the defendant on the amount he was paying.
The defendant relies chiefly upon Vilas v. Vilas, 1943, 153 Fla. 102, 13 So.2d 807, which reversed a chancellor’s order denying a former husband relief from a final decree requiring him to pay $160 in monthly alimony, taxes and insurance on a home and premiums on certain life insurance policies. The uncontradicted testimony and financial records of the former husband in that case disclosed a decline from $7,500 to $4,200 in the annual income which he was receiving from the business partnership of which he was a member. Because of this unexpected change in his circumstances a final decree which originally consumed about 30% of his income subsequently consumed about 60%.
 No such change was shown here. The defendant already had sold his interests in the steel business when he signed the agreement While the amount of support was based, in part, upon his prior salaries as an executive in that business,[2] the defendant must have foreseen that his future income from activities such as investments in real estate and boats and the *348 operation of a marina and charter service in Florida probably would not equal those earnings. The financial records which purportedly disclose a reduction in assets from $627,000 in 1959 to $436,000 in 1963 are inconclusive[3] and therefore insufficient to overcome the chancellor’s contrary finding that there had been no substantial decrease in the defendant’s assets. The defendant admitted that it was unrealistic simply to compare the gross salaries which he earned as an executive in 1958-1959 with the loss shown on his income tax return for 1963. His conversion of various income tax figures into so-called “disposable income” figures of $59,000 for 1959 as against $26,000 for 1963 also is unrealistic and inconclusive.[4]
The evidence does not justify the conclusion that his income for 1963 will remain at that relatively low amount; therefore he failed to show that the change in his economic situation is of a permanent nature.[5] Chastain v. Chastain, Fla.1954, 73 So.2d 66. In short, the chancellor’s findings and conclusion are supported by substantial competent evidence and no error or abuse of discretion has been shown.[6]
Affirmed.
ALLEN, C. J„ and SHANNON, J., concur.

. The agreement recites that copies of the parties’ income tax returns had been furnished to counsel for the plaintiff. A schedule of the defendant’s assets also was attached. Article XIII of the agreement expressly provided: “This agreement is made based upon economic conditions of December, 1959.”

. See note 1, supra.

. Although the 1959 agreement obligated the defendant to transfer certain of his assets to the plaintiff, the $627,000 figure for 1959 was not reduced by the value of assets so transferred. Further, most assets on the 1959 schedule were liquid with readily verifiable values, while most assets on the 1963 balance sheet were fixed and listed at net cost after substantial allowances for accumulated depreciation. Accumulated depreciation on rental properties totalling $64,000 was deducted from cost figures totalling $334,000 leaving a net figure of $270,000 to which was added $118,000 for0land, giving a total figure of $388,000 for real estate investments. The marina which involved a cash investment of over $100,000 was listed separately from the rental properties at a book value figure of $69,-000. This took into account a considerable amount of depreciation — over $32,-000 for one year. Finally, the $436,000 figure for 1963 did not reflect the appreciation in value of the Ft. Lauderdale residence, upon which a $30,000 gain subsequently was realized, or the appreciation in value, if any, in the marina and rental properties.

. While the 1959 salaries were subject to substantial income taxes, no income taxes were due on 1963 income chiefly because large deductions were available, including $32,000 of depreciation of the yacht marina and $10,000 for alimony. The defendant’s “disposable income” in 1963 was $4,000 less than other years because in 1963 the new owners of the steel companies charged against his $12,000 severance salary a $4,000 item representing the defendant’s share of an income tax deficiency which the internal revenue service had assessed against them. The “disposable income” figure of $26,000 for 1963 was reached by deducting from $42,-400 of income “after expenses but before depreciation” $16,400 of “business obligations.” These consisted chiefly of principal payments on mortgages covering two rental properties and the marina. Some of the costs and expenses charged to the marina and not included in the defendant’s “disposable income,” chiefly those involving a new 57-foot Chris Craft, a 1964 Cadillac automobile, business entertainment and yacht club and similar expenses, also enhanced the defendant’s standard of living.

. To the contrary, much of the evidence shows his present economic condition is temporary. For instance, a tenant went out of business and he lost rental income of $18,000 per annum from that building but he continues to own the building. Another tenant went into bankruptcy and he lost most of the rental income from that property.

. Reduction of alimony should not be granted on consideration only of a husband’s lessened income without giving consideration to his sizeable capital assets. Simon v. Simon, Fla.App.1962, 137 So. 2d 613.