280 So.2d 67 (1973)
Gladys J. OSMAN, Appellant,
v.
Daniel OSMAN, Appellee.
No. 72-964.
District Court of Appeal of Florida, Third District.
June 12, 1973.
Rehearing Denied July 23, 1973.
Barrett, Diliberto & Estrumsa, and Joan A. Berk, Miami, for appellant.
Horton & Perse, Miami, for appellee.
Before PEARSON, CHARLES CARROLL and HENDRY, JJ.
CARROLL, Judge.
This appeal is by an ex-wife, herein referred to as the wife, from a post divorce judgment order granting a petition of the ex-husband for modification of the judgment, to relieve him of further payment of alimony. We find error, and reverse.
The parties were divorced in Dade County by a judgment entered September 1, 1969. Incorporated in the judgment by reference, and adopted by the court, was an eleven page property settlement agreement. *68 The provision therein for payment of alimony was as follows:
"3. That the Husband shall pay to the Wife for her support and maintenance, the sum of Five Hundred ($500.00 Dollars monthly. Said payments shall be made on a bi-monthly basis with one-half payable on the first day of each month, and one-half payable on the 15th day of each month, commencing the 1st day of July, 1969. All liability of the Husband to make such payments shall cease upon the happening of whichever of the following events shall occur first: 1) the death of the Husband; 2) the remarriage of the Wife subsequent to a divorce of the parties hereto; 3) the death of the Wife."
The agreement made provision for payment by the husband of $250 per month support for each of the two minor children of the marriage, then aged 12 and 14 years, and other provisions relating to support of the children under varying circumstances. It was agreed therein that the jointly owned residence premises should be sold, furnished, and the proceeds shared. [At the post judgment hearing it was shown that sale of the residence property for $125,000 had been contracted for, from which the net amount to be received by the wife was $40,000.] Included was an agreement that in the event either party should apply for a divorce the settlement agreement should be effective, and that both parties would be bound by the provisions therein, including those as to alimony, suit money and attorney fees.
In granting the husband's motion to terminate payment of alimony, the court made certain findings relating to the health of the husband. Those were that according to the evidence the husband was "suffering from a medical condition which has endangered and is presently endangering his health and life and which condition is aggravated by the defendant's standing for extended periods of time in the course of his [medical-surgical] practice"; and that the testimony "indicates that the defendant to his physical detriment has been required due to financial considerations to work longer hours than is medically advisable;" and further: "That according to the medical testimony presented, if the defendant continues to work the number of hours per day or week that he has been doing, he will be jeopardizing his life and health."
The evidence revealed the condition suffered by the husband was from lack of sufficient blood circulation in his lower extremities; that the condition had been present since 1949; and that in 1970 an operation had been performed, as a result of which the physical condition was secured, if not actually improved.
The court also found "that the plaintiff [38 years of age] is for all appearances and by her own statements in a healthy condition and well capable of working and providing a living for herself." [The wife has a high school education. Her good health and potential to earn her living were equally known or apparent earlier when the agreement and judgment for payment of alimony were made.]
The evidence submitted on behalf of the wife indicated continuing need for the alimony in that she had no other means of support. She stated it was her intention to place herself in a position to earn a living so that she might become self-supporting in the future, and that she had applied at Jackson Memorial Hospital for the nurse training course, and if accepted her period of training therefor would be thirty-one months.
In the order entered by the trial court it was noted that the residence premises of the parties was being sold and that the wife would receive $40,000 therefrom. However, her right to share in the proceeds of the sale of the residence had been recognized and provided for in the settlement agreement in which the provision for payment of alimony also was contained.
In terminating the alimony payments for the future, the order directed the husband *69 to pay the wife $6,000 as lump sum alimony. Without commenting on the propriety of granting lump sum alimony on a petition for modification where none was provided for in the judgment, it is to be observed that the $6,000 ordered to be paid as lump sum alimony was the equivalent of the agreed and decreed installment alimony for the period of one year. In essence, what the order did in that regard was to require the husband to continue to pay the $500 per month alimony for one more year, by paying the amount thereof in advance, and terminating the payment of alimony thereafter.
Regarding the husband's ability to pay the alimony, the record shows his gross income increased from $61,000 in 1969 (the year in which the settlement agreement was made and the divorce judgment entered), to $83,000 in 1970, and to $102,000 in 1971 (the calendar year that preceded the one in which the modification was made).
Against that disclosure of ample and adequate financial ability to continue payment of the alimony, the husband presented evidence of increase in his personal expenses due to his having remarried, including the payment of $450 a month rent on an apartment and having been required to expend $20,000 to furnish the apartment; and that he was paying $405 per month for rental of a Mercedes automobile, and due to increasing business he would be required to enlarge his staff and be subjected to more expense for his medical office. Those expenditures appear inconsequential in view of the husband's gross income of more than $100,000 a year, and it was not shown how they could represent a material change in his financial ability in the respect involved here.
The errors made by the trial court, for which we are impelled to reverse the order, were two. First, the court incorrectly considered that a continuing or advancing poor health situation of the husband was a change in circumstances which should relieve him of the obligation to pay the alimony, notwithstanding he was shown to have greater financial ability than he had at the time the alimony was agreed upon and ordered to be paid. It is the financial ability of the husband, rather than his condition of health which is the important and controlling factor. The husband's ability to pay the alimony was made apparent, and while it remains so, the alimony should not be terminated because of ill health of the husband.
Secondly, on the findings made by the court the termination of alimony was premature. If and when the wife, who had indicated a desire to do so, should become self-supporting, that then would be a change of circumstance upon which to seek modification to terminate payment of alimony. Likewise, if the husband's condition of health, which had not affected his earning capacity, should become such that the husband has been required thereby to discontinue the practice of medicine, or has been forced thereby to reduce his practice to such an extent that his income falls to an amount that proves to be insufficient from which to make the alimony payments, it would be time enough to observe and act upon such a change in his financial ability, if and when it should come to pass.
For the reasons stated, the order appealed from is reversed.