394 So.2d 443 (1981)
Beatrice JAFFEE, Appellant,
v.
Marvin JAFFEE, Appellee.
No. 80-146.
District Court of Appeal of Florida, Third District.
February 3, 1981.
Rehearing Denied March 3, 1981.
*444 Rubin & Friedman and Melvin A. Rubin, Miami, for appellant.
David M. Gersten, Miami, for appellee.
Before SCHWARTZ, NESBITT and BASKIN, JJ.
SCHWARTZ, Judge.
The ex-Mrs. Jaffee appeals from an order reducing the alimony provided in a November, 1970 "property settlement agreement," as incorporated into a final judgment of divorce entered in January, 1971. She also challenges the trial court's order that her former husband pay only half of the $12,500 in reasonable attorney's fees required for her defense of the modification proceeding. We reverse on both counts.
When their marriage broke up in 1970, the Jaffees had been married for over 20 years and had four children, ranging in age from 13 to 19. Dr. Jaffee was  and still remains  an active and successful pathologist. Mrs. Jaffee is a registered nurse, but had devoted the vast majority of her recent efforts to her domestic duties. The agreement, which both parties executed with the advice of respective counsel, provided for support payments of $250 per child per month until 21, and the disposition of the marital home after the last child had left, with the proceeds to be evenly divided. On the now-critical issue, it was agreed that Dr. Jaffee would pay permanent periodic alimony of $1,000 per month, subject to cost-of-living adjustments. It was further expressly stated:
The parties acknowledge that the Wife is a trained registered nurse with supervisory experience, and in the event that the Wife should resume her nursing career in order to supplement her income, such resumption of work by the Wife shall not be the basis for the Husband to seek a reduction in alimony due to the Wife.
In 1978, after two prior unsuccessful attempts to do so, Dr. Jaffee filed the present motion to reduce or eliminate his alimony obligation.[1] Although there was some reference to an alleged diminishment in the husband's earning abilities,[2] the primary thrust of the proceeding was that modification was justified by changes in Mrs. Jaffee's financial circumstances. By the time of the hearing on the motion in 1979  when the alimony payments had become $1,500 per month  Mrs. Jaffee was 58, the children had all reached 21 and the home had been sold. Although she had received no other funds since the divorce, Mrs. Jaffee's half of the proceeds of the home had been converted into some $70,000 in assets of various kinds, including a $5,000 deposit on a new condominium residence. Insofar as employment was concerned, Mrs. Jaffee was listed with a nursing registry, from *445 which she averaged approximately one day of work per week. Although she said she wanted to work more often, she also acknowledged that she had not sought full-time employment both because of her health and, more important, because she simply did not wish, at her age, to recommence full-time work after thirty years of not having done so. She continued instead to rely heavily upon the alimony payments in order to support herself.
On the basis of this testimony, the trial judge granted the husband's motion in part, holding:
The Court finds and determines that there has been a substantial change of circumstances in this case to justify a modification and that the husband is entitled to a reduction, but not an elimination of alimony entirely.
The Court finds and determines that there has been a substantial change in the financial condition of the parties. The children of the marriage are no longer minors and they do not reside in the marital home with the Mother. In fact, the marital home has been disposed of and the wife is in the process of purchasing a condominium home.
The Court finds and determines that both parties have financial resources and assets of their own.
The Court finds and determines that the wife is a fully licensed Registered Nurse and while she chooses on her own volition to work only one day a week she is both physically able and employment is available should she desire.
The Court finds and determines that the wife's testimony that her needs are approximately $36,000 yearly is unrealistic. The wife is a single, healthy, licensed Registered Nurse who can play tennis and otherwise has a normal activity schedule.
In accordance with these determinations, the court reduced the $1,500 alimony provision to $900 per month for a period of five years,[3] after which the issue was to be reexamined. This order is entirely unsupported by the controlling law and cannot be approved. While the trial court correctly determined that the alimony provision of the Jaffees' agreement was in fact generally subject to modification upon a proper showing, § 61.14, Fla. Stat. (1977),[4] the grounds relied upon below  the "changes" in Mrs. Jaffee's financial situation and availability for additional employment  were plainly, and as a matter of law, insufficient to justify the granting of that relief in this case. This is so because of the effect of two separate rules of law, both of which are directly contrary to the order under review.
No Unanticipated Change of Circumstances. In the first place, it is well-established that an alimony award may not be modified because of a "change" in the circumstances of the parties which was contemplated and considered when the original judgment or agreement was entered. E.g., Withers v. Withers, 390 So.2d 453 (Fla. 2d DCA 1980); Coe v. Coe, 352 So.2d 559 (Fla. 2d DCA 1977); Ashburn v. Ashburn, 350 So.2d 1158 (Fla.2d DCA 1977); Howell v. Howell, 301 So.2d 781 (Fla. 2d DCA 1974); Waller v. Waller, 212 So.2d 352 (Fla.3d DCA 1968); Tewksbury v. Tewksbury, 178 So.2d 346 (Fla.2d DCA 1965). The reason for this doctrine is an obvious one: if the likelihood of a particular occurrence was one of the factors which the court or the parties considered in initially fixing the award in question, it would be grossly unfair subsequently to change the result simply because the anticipated event has come to pass. Both the rule itself and its rationale apply directly to this case. All of the *446 "changes" in Mrs. Jaffee's situation were known, anticipated, and bargained about when the parties formulated their agreement in 1970:
(a) The obvious fact that the children would all eventually turn 21 and leave the home was provided for by the elimination of the husband's obligation to pay child support, specifically without any effect on the permanent alimony payments; see, Coe v. Coe, supra; Waller v. Waller, supra;
(b) Mrs. Jaffee's receipt of substantial funds from the sale of the marital home was the result of the specific provision to that effect in the agreement (which, again, nevertheless did not provide for a reduction in alimony when the sale took place). Ashburn v. Ashburn, supra; Howell v. Howell, supra; compare, Friedman v. Friedman, 366 So.2d 820 (Fla. 3d DCA 1979), cert. denied, 376 So.2d 71 (Fla. 1979), in which the wife received a large inheritance after the divorce.
(c) As to the element which most influenced the trial court, both parties obviously were aware of Mrs. Jaffee's education and training as an R.N., and of the fact that she would become available to take on more work after the children grew up and moved away. See, Coe v. Coe, supra; Waller v. Waller, supra. In this connection, it should be emphasized that, unlike Friedman v. Friedman, supra, and Anderson v. Anderson, 333 So.2d 484 (Fla. 3d DCA 1976), upon which the trial court relied, Mrs. Jaffee is not actually self-supporting without reliance on the alimony, but merely has the alleged potential ability to become so.
Based on an analysis similar to this one, Withers v. Withers, supra, reversed the elimination of an alimony obligation in an "aging ex-wife-R.N. v. ex-husband-M.D." dispute in which the facts, in many respects, were remarkably like these. We would also find that the order below is unjustified even in the absence of the husband's specific contractual waiver, to the effect of which we now turn.
Husband Contractually Precluded from Reliance on Wife's Employability. As we have seen, the primary basis for reducing the agreed-upon alimony payments was the trial judge's view that, if she wished, Mrs. Jaffee could support herself through her earnings as a qualified registered nurse. Even assuming the factual accuracy of this determination, Dr. Jaffee is precluded from relying upon it, as he successfully did below, by his specific contrary agreement that any "resumption of [her nursing career] by the Wife shall not be the basis for the Husband to seek a reduction in alimony... ." [e.s.] There is no question of the validity and binding effect of this contractual undertaking, viewed either as a limited waiver of an otherwise existing right to seek modification, see, Lee v. Lee, 157 Fla. 439, 26 So.2d 177 (1946); Kilpatrick v. McLouth, 392 So.2d 985 (Fla. 5th DCA 1981) (complete waiver of right to modification valid); Muss v. Muss, 390 So.2d 415 (Fla.3d DCA 1980) (same); Turner v. Turner, 383 So.2d 700 (Fla. 4th DCA 1980) (same); or, more straightforwardly, as a provision that sums which Mrs. Jaffee actually earns (which, a fortiori includes sums which she merely could earn) from nursing shall not be deducted from the amount the husband must pay. See, e.g., Pusey v. Pusey, supra, 386 So.2d at 271, n. 1. Moreover, the meaning of the clause in question is entirely unambiguous, and is clearly conveyed by the plain language employed by the agreement itself. While Dr. Jaffee testified that it was his "intent" that the clause was not to apply after the children left the home, it is apparent that this testimony was incompetent as an attempt to vary the terms of a written document through the insertion of qualifying language which does not appear on its face. Ross v. Savage, 66 Fla. 106, 63 So. 148 (1913); Davis v. Fisher, 391 So.2d 810 (Fla. 5th DCA 1980) (Case no. 79-284, opinion filed, December 31, 1980); Pearson v. Pearson, 342 So.2d 1018 (Fla. 4th DCA 1977); see also, Gendzier v. Bielecki, 97 So.2d 604 (Fla. 1957); Pusey v. Pusey, supra; Coe v. Coe, supra; cf., Bacardi v. Bacardi, 386 So.2d 1201 (Fla.3d DCA 1980).
*447 The order below represents, therefore, no less than the judicial abrogation of a particular contractual provision so as to relieve one party of its burdens and deprive the other of its benefits.[5] But, as we have said recently in another context, courts simply do not possess any such authority, in the case of an agreement of this type or of any other. Twenty Four Collection, Inc. v. Keller, 389 So.2d 1062 (Fla. 3d DCA 1980).
The appellee contends that the effect of this holding will be to encourage his ex-wife to rely upon him for a lifetime, rather than to engage in the remunerative work of which she is capable. The primary answer to this argument is that, for his own reasons and in return for his own benefits,[6] Dr. Jaffee specifically agreed that she should be entitled to do so. In common with all contracting parties, the appellee should be held to his bargain.[7] As this court, speaking eloquently through Judge Baskin, recently held in the similar case of Adler v. Adler, 391 So.2d 242 (Fla. 3d DCA 1980):
[The husband] argues that the agreement creates a windfall for the wife and places disproportionate obligations upon the parties. The husband's argument is totally devoid of merit. He apparently seeks to overturn the property settlement agreement he voluntarily entered and to avoid its consequences. Such action would render his agreement meaningless as the product of whim rather than of thoughtful planning to determine the parties' rights. We find no error in the court's action incorporating the agreement into the final judgment of dissolution. Since the agreement expressed the intent of the parties, the trial court erred in failing to enforce its provisions. [e.s.]
For these reasons, we hold that the appellee did not carry the exceptionally heavy burden required to set aside an alimony allowance fixed by agreement. Floyd v. Floyd, 393 So.2d 22 (Fla. 2d DCA 1981); Tsavaris v. Tsavaris, 307 So.2d 845 (Fla.2d DCA 1975), cert. denied, 322 So.2d 914 (Fla. 1975); Nixon v. Nixon, 200 So.2d 263 (Fla.3d DCA 1967). Accordingly, the order of modification is vacated. After remand, the husband's obligation to pay alimony shall be restored nunc pro tunc to that required by the terms of the agreement.
Our determination that Dr. Jaffee's attempt to reduce or eliminate the alimony provisions of the existing agreement was totally meritless removes any arguable justification for the finding that he should pay only half of the appellant's reasonable attorney's fees. Since the services involved were expended only in the now-successful defense of the husband's motion, we see no reason why he should not be liable for the entire fee that action required. Northup v. Northup, 217 So.2d 850 (Fla. 3d DCA 1969); Waller v. Waller, supra; Cordrey v. Cordrey, 206 So.2d 234 (Fla. 2d DCA 1968), appeal dismissed, 214 So.2d 617 (Fla. 1968); cf., Rosen v. Rosen, 386 So.2d 1268 (Fla.3d DCA 1980). The requirement that the husband pay $6,250 to the wife's attorneys shall therefore be increased to the full $12,500 *448 found by the trial court to be a reasonable amount for those services.
Reversed.
NOTES
[1] The personal, if not the legal, situation was strongly exacerbated by the fact that Dr. Jaffee remarried almost immediately after the divorce and thus acquired a new and additional set of familial responsibilities. On the other hand, Mrs. Jaffee did not remarry and continued to rely upon the obligations imposed upon her ex-husband by the law, the agreement, and the judgment of divorce. Thus required to pay for two wives, while getting the "benefits" of only one, Dr. Jaffee, like so many former-and-present-husbands in his situation, has spent much of the intervening decade trying to escape from this predicament. The real problems with his dilemma are that it is essentially one of his own making and that the legal rights of another person, his ex-wife, must also be respected and enforced.
[2] Dr. Jaffee, although hindered by arthritis, remains in active practice and earns at least $100,000 per year from his P.A., which practices pathology at Baptist Hospital. In a loan application, he represented his net worth as in excess of $500,000. There is thus no support  and the trial judge did not so find  for any conclusion that the husband is not financially able to make the payments provided by the agreement, and therefore no basis for affirmance of the modification because of a change in the husband's situation. Withers v. Withers, 390 So.2d 453 (Fla. 2d DCA 1980); Osman v. Osman, 280 So.2d 67 (Fla.3d DCA 1973), cert. denied, 289 So.2d 6 (Fla. 1973).
[3] This ruling of course also negated any further cost of living increments provided by the agreement and judgment.
[4] Despite its title, the agreement was merely a settlement of the wife's claim for alimony and support. It did not provide for Mrs. Jaffee's relinquishment of some property right in consideration for Dr. Jaffee's undertaking to pay alimony, which might have rendered the agreement not subject to modification. See, Salomon v. Salomon, 196 So.2d 111 (Fla. 1967); Pusey v. Pusey, 386 So.2d 269, 271 (Fla. 3d DCA 1980).
[5] It should be remembered that the "property settlement agreement" was basically a negotiated settlement of the then-pending divorce action. As in the case of every such agreement, it is presumed that Dr. Jaffee gained a benefit  perhaps of a lower fixed amount of alimony  as a quid pro quo for the insertion of the "employment" clause which was favorable to the wife. Moreover, Dr. Jaffee obviously thought it was in his best interests to execute the completed agreement so as to avoid a contested trial which might have produced much more unfavorable results. These facts  which find their counterpart in every contract which is the result of arms-length bargaining  illustrate the unfairness and unwisdom in changing only a part of this or any agreement in order to benefit only the single party who finds it burdensome.
[6] Not least of these benefits is the discharge of the obligations owed his wife of 20 years and the mother of his children. Colucci v. Colucci, 392 So.2d 577 (Fla.3d DCA 1980).
[7] The appellee's and the trial court's reliance upon Friedman v. Friedman, supra, and Anderson v. Anderson, supra, is misplaced not only because, as we have noted, Mrs. Jaffee has never become self-supporting, but also because neither case involved, as does this one, a specific waiver by the husband of the right to rely upon the wife's capacity for self-support.