ON MOTION FOR CLARIFICATION

CIKLIN, J.
We grant the appellant’s motion for clarification, withdraw our previous opinion dated March 26, 2014, and substitute the following.
The appellant (“the former husband”) challenges the order denying his petition to modify alimony and the award of attorneys’ fees. He raises two issues on appeal: 1) the court’s denial of his modification petition based on a finding that, at the time the former husband entered into the marital settlement agreement, he contemplated that his multiple sclerosis (“MS”) would deteriorate to the extent he would be unable to work, and 2) the award of attorneys’ fees and costs to the appellee (“the former wife”). Because the trial court’s factual findings did not support the conclusion that the change in circumstances was contemplated at the time of the settlement agreement, and the trial court did not reach the issues of whether the change in circumstances was substantial, sufficient, material, involuntary and permanent, we reverse the order denying modification and remand for further proceedings. With respect to the attorneys’ fees, we find that to the extent the award was based on need and ability to pay, the former husband did not establish reversible error.

Pertinent Facts

In 2000, the former husband and the former wife entered into the settlement agreement which provided, among other things, that the former husband would pay the former wife permanent periodic alimony of $5000 per month. At the time the agreement was entered, the former husband had MS[1] and was employed full time. The settlement agreement was silent as to the former husband’s MS.
In 2011, after the former wife filed a motion for contempt and enforcement related to alimony, the former husband filed his Supplemental Petition for Modification of Alimony. He alleged that due to his MS, he resigned from his position as a chief financial officer. He characterized the resignation as involuntary. He also alleged that he suffered an exacerbation of his condition in 2011 when he had an “MS attack and seizure,” and that “[d]ue to the advancement of the illness, the Former Husband has a continuing growth of lesions on his brain and spinal cord which results in unpredictable speech, physical and cognitive functions.” The former wife counter-petitioned for attorney’s fees and costs based on her need and the former husband’s ability to pay.
At a hearing on the petitions, the former husband testified to the following. When he was diagnosed, he was told MS was “very unpredictable,” but that he could lose his sight and ability to walk. He testified that about twelve years after his diagnosis, a doctor informed him he had *1117 “benign” MS and that there was no need for medication. In 2011, he had an MS “attack.” This caused difficulty speaking and breathing and partial paralysis. After treatment, he was able to walk again. At the time of the hearing on the petitions, he was experiencing cognitive and emotional issues, fatigue, and problems with his balance and bladder control.
The former husband’s neurologist testified to the following. MS is a chronic disease which means the condition could last a lifetime. Chronic does not mean the same thing as progressive. The initial symptoms of MS are “highly variable.” In the worst cases, MS can lead to paralysis. It is possible for a patient to go several years with no symptoms. The initial symptoms are not predictive of the course the disease will take. However, a “majority of patients will have a progressive course in which they develop more symptoms as time goes on.” About eighty to ninety percent of patients have the relapsing and remitting course of the disease, which involves a cycle of “flare ups” but with periods of improvement. The others, usually older patients, have primary progressive or secondary progressive disease, where they do not improve. The former husband’s neurologist believed his patient probably had the relapsing and remitting-type of MS but “may be developing secondary progressive.” It was “very possibly” foreseeable that over time, a person with MS is going to develop conditions like vision and cognitive problems and fatigue. It was “more likely” that a person diagnosed with MS would have the form that exacerbates over time rather than remains benign. However, the neurologist did not give patients prognoses as to their future condition when rendering a diagnosis because “[y]ou really can’t predict that.” He has had patients who “live perfectly normal lives ... I think the longer the patient does well, the less likely they are to have an exacerbation.”
The court entered a judgment denying the modification petition. The court found the former husband experienced symptoms during and after his marriage to the former wife, and that these symptoms “indicated that at some point in the future he probably would have more severe symptoms that would affect his ability to maintain employment and his earning capacity.” The court also found the following:
The Former Husband was diagnosed with MS during the marriage, knew it was a progressive disease, and knew it was foreseeable that his condition would worsen. The medical evidence supports the likelihood of this progression. As such, while the Former Husband’s condition may prevent him from holding certain employment, this condition was foreseeable at the time of the dissolution.
The denial was based on a finding that the “alleged change in circumstances was a foreseeable and contemplated event,” and that the former husband failed to meet his burden, “particularly since his burden is higher since the alimony was originally agreed to by the parties.” The court noted that it was not necessary to consider the other elements necessary for modification since the former husband did not establish that the change was unforeseeable.[2]
The court awarded attorneys’ fees and costs to the former wife on two grounds— *1118 her demonstrated need juxtaposed against the former husband’s ability to pay, and a prevailing party provision in the settlement agreement.
On appeal, the former husband argues that because his neurologist testified that MS is not a predictable disease, and the former husband could not have contemplated what course the disease would have taken after he entered into the settlement agreement, the trial court erred in finding that the former husband’s deteriorating condition was contemplated and foreseeable when he executed the agreement.

Analysis

The standard of review for an order on a motion to modify alimony is abuse of discretion. Zeballos v. Zeballos, 951 So.2d 972, 974 (Fla. 4th DCA 2007) (citation omitted). Section 61.14(1)(a), Florida Statutes, governs modification of support and provides the following in pertinent part:
When the parties enter into an agreement for payments for ... alimony ... and the circumstances or the financial ability of either party changes ... either party may apply to the circuit court ... for an order decreasing or increasing the amount of ... alimony, and the court has jurisdiction to make orders as equity requires, with due regard to the changed circumstances or the financial abilities of the parties ....
§ 61.14(l)(a), Fla. Stat. (2011). Further, “the proof required to modify a settlement agreement and the proof required to modify an award established by court order shall be the same.” § 61.14(7), Fla. Stat. (2011). This court has explained:
In petitioning to modify alimony, the moving party must show three fundamental prerequisites:
First, there must be a substantial change in circumstances. Second, the change was not contemplated at the time of final judgment of dissolution. Third, the change is sufficient, material, involuntary, and permanent in nature.
Zeballos, 951 So.2d at 974 (quoting Pimm v. Pimm, 601 So.2d 534, 536 (Fla.1992)).
 Generally, a deterioration in health can support a reduction in the alimony obligation. See Scott v. Scott, 109 So.3d 804 (Fla. 5th DCA 2012) (affirming reduction of alimony obligation where the former husband suffered two heart attacks which substantially reduced his heart’s functioning capacity, and was receiving social security disability after being determined to be totally disabled, but reversing for further reduction); Boone v. Boone, 3 So.3d 403 (Fla. 2d DCA 2009) (reversing for further reduction in alimony where record supported court’s finding that there was a substantial change in circumstances, as husband’s deteriorating health rendered him unable to work).
Whether it be a change of health or any other curveball life indiscriminately throws, predictability of the occurrence is the cornerstone to any analysis. In Mendes v. Mendes, 947 So.2d 450 (Fla. 4th DCA 2006), this court recognized the “well-established principle that modification may not be based upon factors affecting income known to the parties at the time a final judgment is entered.” Id. at 452 (citation omitted). “The reason for this doctrine is an obvious one: if the likelihood of a particular occurrence was one of the factors which the court or the parties considered in initially fixing the award in question, it would be grossly unfair subsequently to change the result simply because the anticipated event has come to pass.” Jaffee v. Jaffee, 394 So.2d 443, 445 (Fla. 3d DCA 1981) (emphasis added).
*1119 In Jaffee, the court reversed an order reducing the former husband’s alimony obligation because all of the changes in circumstances he alleged — that the children would turn 21 years old and leave home, that the former wife would receive funds from the sale of the marital home, and that the former wife would work more when the children moved out of the home — were “known, anticipated, and bargained about when the parties formulated their agreement.” Id. at 446. In contrast, our Mendes opinion found that the subject alimony amount was calculated based on the husband’s 2002 income “without taking into account the possibility of future decline.” Mendes, 947 So.2d at 452. This court reasoned that “while the possibility of fluctuating market conditions affecting Mr. Mendes’s income may have been known to the parties at the time of the settlement agreement and final judgment, the character of the actual change and consequences to income were not known at the time of the final judgment. A possibility that income will decrease is not knowledge that it will do so.” Id. (citation and quotation marks omitted).
Here, the trial court essentially found that the neurologist’s testimony established the likelihood of deterioration in those diagnosed with MS. However, as in Mendes, while the parties may have been aware of a particular possibility at the time they entered into the settlement agreement, this does not equate to knowledge of the “character of the actual change and consequences to [the former husband’s medical condition along with the resultant effect on his] income.” Id. Additionally, there is no indication in the record that at the time he entered into the settlement agreement, the parties considered the possibility that the former husband’s condition would deteriorate to the extent he would no longer be able to work. Record evidence indicates that although the former husband was diagnosed in 1986, he was still working full time when the parties entered into the settlement agreement in 2000, and he continued working full time for years afterward.
A First District case also supports the proposition that knowledge of a possibility, standing alone, is insufficient to preclude a modification of alimony when the possibility materializes or otherwise comes to fruition. In Bedell v. Bedell, 523 So.2d 166 (Fla. 1st DCA 1988), the parties entered into a marital settlement agreement requiring the husband to pay the wife a set monthly amount of permanent alimony. Id. at 167. After the wife’s parents died and left the wife a substantial inheritance, the husband petitioned for modification, claiming the wife’s need had decreased. Id. The trial court found that the wife’s inheritance was contemplated and thus could not support a modification. Id. The First District disagreed and opined:
Initially, we agree that the possibility of the wife receiving a substantial inheritance from her parents may well have been contemplated by the parties when they entered into the settlement agreement. At the time of dissolution, the wife’s mother was 85 years old and her father 87. The record discloses that the parents had already given substantial gifts to the husband and wife during their marriage. Notwithstanding that the parties contemplated that the wife might receive an inheritance from her parents, the actual receipt of the inheritance and the amount received were nonetheless neither certain nor guaranteed; at best they could be only fairly described as an expectancy.... Such a future expectancy cannot properly be considered a contemplated change of circumstances necessarily barring an appli *1120 cation for modification of alimony if in fact the circumstance occurs.
Id. at 167-68.[3]
The former wife argues that the former husband could have addressed his medical condition in the settlement agreement. Our supreme court rejected such an argument in Pimm v. Pimm, 601 So.2d 534 (Fla.1992), where the changed circumstance was voluntary retirement. The Court acknowledged that it would be preferable to address the circumstance of retirement in an agreement or final judgment, but it found that “silence in that regard should not preclude consideration of a reasonable retirement as part of the total circumstances in determining if sufficient changed circumstances exist to warrant a modification of alimony.” Id. at 537. Likewise, silence in the agreement here should not act as an automatic bar to the court’s consideration of whether the former husband’s alleged changed condition was sufficient to warrant modification.
Finally, we note that the trial court’s denial of the modification petition was based “particularly” on the court’s finding that the former husband failed to meet a heavier burden because the subject alimony award was set by an agreement between the parties. However, the applicable statute was amended in 1993 to provide that the proof required in modification proceedings involving alimony set by agreement versus alimony set by the court is the same. See Pratt v. Pratt, 645 So.2d 510, 511 n. 1 (Fla. 3d DCA 1994) (recognizing that section 61.14, Florida Statutes, was amended in 1993 to provide for the same burden of proof to apply to modification of alimony set by agreement and alimony set by the court); § 61.14(7), Fla. Stat. (2011).
Based on the foregoing, we find the trial court erred in denying the modification petition based on its finding that the former husband was aware of the likelihood that his medical and financial conditions would worsen. Accordingly, we reverse and remand for the trial court to determine whether the former husband established a substantial change in circumstances that was not contemplated and “sufficient, material, involuntary, and permanent in nature.” Woolf v. Woolf, 901 So.2d 905, 912 (Fla. 4th DCA 2005) (citations and quotation marks omitted).
With respect to the award of attorneys’ fees, the trial court awarded fees based both on a provision in the marital settlement agreement and a statutory provision.[4] The former husband challenges the *1121 contractual basis for the award, but does not question the statutory basis which we find was within the discretion afforded to the trial judge and thus affirm.

Affirmed in part, reversed in part, and remanded for further proceedings.

STEVENSON and KLINGENSMITH, JJ., concur.

. He was diagnosed in 1986.

. Earlier in the order, the court stated the former husband "has not established a substantial change in circumstances,” and "has not established that the change is sufficient, material, permanent and involuntary.” However, later in the order, the court made it clear it did not reach those issues as it based its denial on the issue of whether the change was contemplated.

. We are aware that language in Urbanek v. Urbanek, 484 So.2d 597 (Fla. 4th DCA 1986), could be read as holding that knowledge of a multiple sclerosis diagnosis at the time a settlement agreement is entered precludes modification based on the condition. In that case, the parties had entered into an antenuptial agreement providing for a specified amount of lump sum alimony payable to the wife upon dissolution of the marriage after four years of marriage. In the dissolution proceedings, the wife sought additional lump sum alimony based on a diagnosis of multiple sclerosis. This court reversed the trial court’s award of additional lump sum alimony and rejected the former husband's argument that the former wife’s attempt at modification was frivolous. The court wrote that the former wife’s modification petition was made in good faith as ‘‘[t]here was evidence supporting a finding that [the former wife] did in fact have the disease, and that it was not a matter known to the parties or contemplated when the antenuptial agreement was executed.” Id. at 601. We find Urbanek inapplicable as the court was not directly addressing the issue raised in this case.

. Section 61.16(1), Florida Statutes (2011), provides in part that the trial court "may from time to time, after considering the financial resources of both parties, order a party to pay a reasonable amount for attorney’s fees, suit money, and the cost to the other party of maintaining or defending any proceeding un *1121 der this chapter, including enforcement and modification proceedings and appeals.”