# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

———————————————

Case No. 5D2023-1347
LT Case No. 2020-DR-033794

———————————————

JONATHAN T. DWIGHT,

    Appellant,

    v.

MARY L. DWIGHT,

    Appellee.

———————————————

On appeal from the Circuit Court for Brevard County.
Jigisa Patel-Dookhoo, Judge.

Elizabeth Siano Harris, of Harris Appellate Law Office, Mims,
for Appellant.

Douglas D. Marks, of Douglas D. Marks, P.A., Indialantic, for
Appellee.

October 18, 2024

EDWARDS, C.J.

    Former Husband appeals, arguing that the trial court abused
its discretion in denying his supplemental petition for downward
reduction or elimination of the permanent periodic alimony he
pays to Former Wife.  The basis of his petition to modify was that
he retired, resulting in a significant reduction in his income.  The
parties' mediated marital settlement agreement ("MSA"), which

set the alimony amount, specifically addresses the possibility that upon retiring, Former Husband might file a supplemental petition seeking modification of alimony. The trial court denied the petition based on a finding that the parties had "contemplated" Former Husband's retirement in the MSA; thus, ruling that his retirement could not serve as a basis for modification. We reverse and remand for further proceedings.

Background Facts

In 2020, Appellee, Mary L. Dwight ("Former Wife") filed for dissolution of their twenty-one-year long marriage. Appellant, Jonathan T. Dwight ("Former Husband"), and Former Wife entered into the MSA, dated October 27, 2020, which divided all their marital assets equally. The MSA required Former Husband to pay $7,500 monthly as permanent periodic alimony to Former Wife. The MSA was incorporated into the final judgment dissolving their marriage, rendered on November 20, 2020. At the time the parties entered into the MSA, Former Husband was sixty-seven years old and Former Wife was sixty-six years old.

While married, the parties enjoyed what the trial court described as an affluent lifestyle. Following the dissolution of their marriage, both had large retirement or investment accounts with readily accessible liquid assets. During the marriage, Former Husband was half-owner, along with his brother, of a restaurant and catering business, the Green Turtle Market ("the Green Turtle"). His earnings from the Green Turtle varied from $300,000 in good years to $177,000 as the COVID pandemic began impacting the business in 2020.

In the fall of 2021, the brother made a limited time offer to buy out Former Husband's interest in the Green Turtle. In December 2021, Former Husband retired and sold his interest to his brother for a $900,000 lump sum payment. Pursuant to the MSA, Former Husband paid Former Wife $75,000 following the sale of his interest to his brother, in addition to the $275,000 he previously paid her, all in return for her releasing her claims in the Green Turtle.

Following his retirement and sale to his brother, Former Husband has not received any further compensation from the

2

Green Turtle and is not employed anywhere. Former Husband testified at the trial on his modification petition that his sole monthly income now is social security retirement benefits of approximately $3,900 per month. Former Husband's accountant testified that it would be reasonable to earn five percent on his cash on hand, yielding a little more than $3,900 for a total gross monthly income of just over $7,800 according to the trial court. His monthly expenses, including the $7,500 alimony payments, were found to be $18,682.

Former Wife had been an accountant earlier and had also worked for the Green Turtle as an employee. She no longer works and made the decision to defer the start of her social security retirement benefits until age seventy to maximize her monthly benefit. Thus, she had no monthly income other than the $7,500 permanent periodic alimony payments. At the time of the trial on Former Husband's petition for modification, his asset total was approximately $1.5 million and Former Wife's was approximately $1.8 million.

Standard of Review

An appellate court's standard of review on orders regarding modification of alimony is mixed. *See Bauchman v. Bauchman*, 253 So. 3d 1143, 1146 (Fla. 4th DCA 2018) (citation omitted). As long as they are supported by competent, substantial evidence, "a trial court's factual findings are reviewed for abuse of discretion." *Id.* "The trial court's legal conclusions are reviewed de novo." *Id.*

Justification for Modification of Alimony

When parties have entered into an MSA that calls for payment of alimony, either party may apply for an order modifying alimony based upon a change in circumstances or financial ability. § 61.14(1)(a), Fla. Stat. (2022). That same provision authorizes the circuit court having jurisdiction to enter such "orders as equity requires, with due regard to the changed circumstances or the financial ability of the parties" to decrease, increase, or confirm the amount originally provided for. *Id.*

Case law speaks to what equity requires before modification is ordered. For example, in *Befanis v. Befanis*, 293 So. 3d 1121, 1123 (Fla. 5th DCA 2020), this Court stated:

> To be entitled to a modification of alimony, the Petitioner must establish three prerequisites: 1) a substantial change in circumstances, 2) the parties did not contemplate the change when the initial alimony obligation was determined . . . and 3) the change is sufficient, material, involuntary, and permanent in nature. (citations omitted).

A spouse's voluntary retirement at or past what is considered normal retirement age, if otherwise reasonable, can result in a change in circumstances that, together with other factors, would justify modification of alimony. *See Pimm v. Pimm*, 601 So. 2d 534, 537 (Fla. 1992); *Dogoda v. Dogoda*, 233 So. 3d 484, 486 (Fla. 2d DCA 2017). Former Wife does not argue that Former Husband's retirement was unreasonable, nor does she challenge that his retirement resulted in a substantial, material, and permanent change in his financial circumstances.

Instead, her contention was that his retirement was contemplated at the time they entered into the MSA, thereby disqualifying retirement as a basis for modification. In the final judgment, the trial court found that "the parties contemplated" and "considered" his retirement when entering into the MSA which "accounted for such a change when the parties agreed on the terms of the alimony support award."

"[I]t is well-established that an alimony award may not be modified because of a 'change' in the circumstances of the parties which was contemplated and considered when the original judgment or agreement was entered." *Jaffee v. Jaffee*, 394 So. 2d 443, 445 (Fla. 3d DCA 1981) (citations omitted). Appellate courts look to see if there was evidence that the parties "accounted for," "contemplated, considered and factored in" the former husband's retirement when they previously agreed to the alimony amount. *Befanis*, 293 So. 3d at 1123.

Orders and opinions regarding such modification petitions have discussed and analyzed whether the changed circumstances

were "contemplated," "considered," and "accounted for," as the trial court did here, while others have tried to determine whether the change was "anticipated" or "foreseeable" when the alimony amount was originally set.

As with many words, each of the foregoing terms has more than one meaning and could be employed inconsistently, leading occasionally to confusion and inappropriate analysis. "Over the years, however, courts have confused 'anticipated' and 'foreseeable' circumstances to mean that such circumstances were 'contemplated and considered' at the time the original judgment was entered." *Bauchman*, 253 So. 3d at 1147. It is clear that mere foreseeability of the future change in circumstances does not mean that it was contemplated, considered, accounted for, or factored in to originally setting an alimony figure. "The trial court's 'foreseeability' analysis should play no role in assessing whether the parties contemplated the loss of the client [which resulted in Former Husband's retirement] when they entered into the MSA." *Allaire v. Allaire*, 371 So. 3d 992, 997 (Fla. 2d DCA 2023). There are countless future events which the parties could contemplate or consider. However, the determinative fact is whether the parties actually factored the future change of circumstances into determining the originally agreed amount of alimony. *Gelber v. Brydger*, 248 So. 3d 1170, 1174 (Fla. 4th DCA 2018).

Whether using just one or any combination of the foregoing terms, the real issue to be determined is whether the petitioner is unfairly seeking what amounts to double counting the same change in circumstances. It is a matter of equity. *Dogoda*, 233 So. 3d at 487. "[I]f the likelihood of a particular occurrence was one of the factors which the court or the parties considered in initially fixing the award in question, it would be grossly unfair subsequently to change the result [or amount] simply because the anticipated event has come to pass." *Jaffe*, 394 So. 2d at 446.

We next look to see if Former Husband's future retirement was factored in, considered, accounted for, contemplated, and/or baked into the $7,500 alimony figure agreed upon in the MSA.

## The MSA

The MSA provision relevant to this appeal is found in paragraph 10 which states in pertinent part:

10. **ALIMONY:** Beginning on November 1, 2020 and continuing on the first of each month thereafter, Husband shall pay to Wife monthly the sum of Seven Thousand Five Hundred Dollars ($7,500.00) as and for permanent periodic alimony. Either party may file at any time to modify or eliminate said permanent periodic alimony as permitted by Florida law. Wife shall be responsible for payment of any and all tax liabilities related to said alimony payments.

Additionally, after a twenty-four (24) month period beginning November 1, 2020 (the "Non—Escrow Period"), should Husband still be obligated to pay permanent periodic alimony to Wife as set forth above and, further, should Husband either file a supplemental petition to modify said alimony on the basis of his retirement at any time after the Non—Escrow Period or otherwise have a supplemental petition to modify said alimony on the basis of his retirement pending at the expiration of the Non-Escrow Period then Husband shall be entitled to pay 50% of his then—current monthly alimony obligation to Wife into an agreed upon escrow account (the "Escrowed Alimony") with the remaining 50% to be paid directly to Wife. Then, upon disposition of Husband's supplemental petition to modify, the parties agree that the Escrowed Alimony will be disbursed in accordance with the Court's ruling on said supplemental petition to modify, whether that be through a refund to Husband for any over payments or through payment to Wife for arrearages related to said Escrowed Funds.

Mentioned in the parties' MSA is the possibility that Former Husband could retire in the future, which certainly qualifies for describing his retirement as anticipated, foreseeable, considered, or contemplated. However, there is no evidence in the record to suggest that his retirement and resulting diminution or loss of

6

income was accounted for, factored in, or baked into the alimony amount of $7,500. There was certainly no testimony to that effect during trial.

Marital agreements are contracts. *Dogoda*, 233 So. 3d at 487–88. Parties are free to contract that a change in employment cannot be the basis for seeking a modification of alimony. *See Jaffee*, 394 So. 2d at 444 (the parties' MSA provided that wife's resumption of work as a nurse could not be the basis for husband to seek reduction in alimony). This case rests near the other end of the spectrum. The fact that the parties here specifically provided that Former Husband could file a supplemental petition seeking to modify his alimony obligation upon retiring cannot be ignored or contorted into a waiver of his right to petition for modification. Further, it negates any conclusion that he was inequitably or unfairly seeking to double count his reduction of income due to retirement by petitioning for a modification of alimony.

We hold that the trial court's finding that Former Husband's retirement was considered, contemplated, and accounted for in the MSA—thereby eliminating that change in circumstances as a basis for his petition for modification is erroneous because it is not supported by competent, substantial evidence. Accordingly, we reverse the final judgment and remand for further proceedings consistent with this opinion.

Former Husband raised additional issues for our consideration; however, given that they may be resolved during the proceedings on remand, we need not decide them at this point. On remand, the trial court is instructed to make specific written findings with regard to Former Wife's need for, and Former Husband's ability to pay support. § 61.08, Fla. Stat. (2022). While the trial court has discretion when it comes to determining the amount of alimony to award, that discretion may be abused when it exhausts or virtually exhausts the paying spouse's net monthly income. *Williams v. Williams*, 10 So. 3d 651, 652–53 (Fla. 5th DCA 2009). Finally, the court's consideration of adultery in awarding alimony is generally limited to whether it resulted in depletion of marital assets. *Lostaglio v. Lostaglio*, 199 So. 3d 560, 563 (Fla. 5th

7

DCA 2016).  Any romantic relationship post-dissolution would not be classified as adultery as to these parties.

REVERSED and REMANDED with instructions.

LAMBERT and JAY, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____