NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

JAMES M. JARRARD,                               )
                                                )
            Appellant,                          )
                                                )
v.                                              )    Case No.  2D13-5091
                                                )
JACQUELINE T. JARRARD,                          )
                                                )
            Appellee.                           )
_____)

Opinion filed January 7, 2015.

Appeal from the Circuit Court for
Hillsborough County; Nick Nazaretian,
Judge.

Kristal L. Knox of Ayo & Iken PLC, Tampa,
for Appellant.

Jeffrey S. Sirmons and Eileen H. Griffin of
Griffin & Associates, P.A., Brandon, for
Appellee.


ALTENBERND, Judge.

            James M. Jarrard appeals a postdissolution order in which the trial court

denied his petition for a modification of alimony and established an arrearage of

$72,110.27 owed to Mr. Jarrard's former wife, Jacqueline T. Jarrard.  The order is based

on the trial court's finding that Mr. Jarrard failed to meet his burden of proof that there

was a substantial change of circumstances that was permanent in nature.  We reverse

the order because Mr. Jarrard met his burden to establish a sufficient, material, permanent, and involuntary substantial change of circumstances that was not contemplated at the time of the final judgment of dissolution of marriage. Accordingly, he is entitled to receive a decision from the trial court as to the nature and extent of the appropriate modification. We remand for the trial court to make that decision. In this opinion we discuss the standard of review applicable to this particular ruling by the trial court.

## I. THE FACTS

The Jarrards married in 1970. In 2004, when they were both in their mid-fifties and after their children were adults, they divorced. It was not a seriously contested divorce; a stipulated final judgment based on a marital settlement agreement was entered in August 2004. In that judgment, Mr. Jarrard agreed to transfer his interest in the marital home to Ms. Jarrard, pay permanent alimony in the amount of $4200 per month, provide life insurance on his life for the benefit of Ms. Jarrard at a cost to him of $100 per month, and pay her attorney's fees. Equitable distribution was not a complex issue; at all relevant times this couples' net assets, both marital and nonmarital, were modest.

At the time of this divorce, Mr. Jarrard had a good job in Louisiana, making about $150,000 per year. Thus, the payments for alimony and life insurance were roughly 35 percent of this gross income. Mr. Jarrard was already retired from the military at that time. As a result, each party received 50 percent of that retirement benefit, which provided and still provides about $2000 per month for each of them. At

the time of the divorce, Ms. Jarrard was earning about $10,000 per year working part time.

Although Mr. Jarrard changed jobs after 2004 and his income decreased, he apparently made his monthly alimony payments until mid-2011. At that time, when he was over sixty years of age, he became unemployed. He looked for a job without success until January 2012. In that month he accepted a job in Naples, Florida, the compensation for which is entirely commission based. Due to the commission structure, his monthly income between January 2012 and July 2013 varied widely between $0 and $15,466. Over the eighteen-month period for the months of February 2012 through July 2013, he earned $90,730, which is $5041 per month. Over the first seven months of 2013, he earned $39,083, which is $5583 per month. Thus, his average monthly income in 2013 was substantially less than $6000, while his average monthly income in 2004 had been about $12,500. This is a reduction in monthly income of more than 50 percent of that earned by Mr. Jarrard at the time of the final judgment of dissolution. At the time of the hearing in this case, the payments for alimony and life insurance had exceeded 70 percent of Mr. Jarrard's average monthly income for two years.[1]

Mr. Jarrard filed his first petition to modify alimony in March 2010, but he voluntarily dismissed it in June 2010. He filed a second petition in September 2011, when he had just become unemployed. The matter was actually tried on his second

---

[1]We realize that these numbers would be even more favorable for Mr. Jarrard if we included the five-month period that he was unemployed. If the military retirement were factored into all calculations, the calculations would be a little less favorable for Mr. Jarrard.

amended supplemental petition for modification or termination of alimony, which he filed in August 2012.[2]

At the hearing on this matter in July 2013 only Mr. Jarrard testified. He introduced various financial documents. By then the parties were in their mid-sixties. Ms. Jarrard was receiving a military pension, social security, and a small additional income for a total of $37,500 per year. There had been no substantial change in her circumstances and her need for support was still evident. The trial court certainly did not err in denying the request to terminate her alimony.

As demonstrated above, however, the evidence did show that Mr. Jarrard had sustained a major, unexpected loss of income. Although the evidence suggested that Mr. Jarrard's income might improve over time, when accepted in the light most favorable to the trial court's ruling, the evidence still would not support a finding that Mr. Jarrard's income would ever return to levels close to what he earned in 2004.

In the order denying Mr. Jarrard's second amended supplemental petition, the court determined that Mr. Jarrard "has failed to meet his burden of proof that there was a substantial change of circumstances that was permanent in nature." As a result, it denied modification and ordered Mr. Jarrard to continue to pay the $4200 per month in alimony plus an accrued arrearage of $72,110.27. It ordered the entry of an income withholding order for 65 percent of each paycheck and a similar amount of his "military retired pay" until the satisfaction of the arrearage.

---

[2]Mr. Jarrard's alimony has never been modified in this case. Thus, this case does not involve a situation in which the change of circumstances should be determined from the time of a prior modification order, such as Johnson v. Johnson, 537 So. 2d 637 (Fla. 2d DCA 1989).

- 4 -

## II. THE STANDARD OF REVIEW FOR A TRIAL COURT'S DECISION CONCLUDING THAT A PARTY HAS NOT ESTABLISHED GROUNDS TO MODIFY ALIMONY

The standard of review in this case warrants some discussion. It is often stated that the standard for an appellate court's review of a trial court's decision to modify alimony is abuse of discretion. See, e.g., Driggers v. Driggers, 127 So. 3d 762 (Fla. 2d DCA 2013); Leonard v. Leonard, 971 So. 2d 263 (Fla. 1st DCA 2008). Once a trial court has determined that the party with the burden of proof has established an entitlement to a decision to modify alimony, the actual decision to modify is a discretionary one. The extent of any modification of alimony, based on the evidence of record, is unquestionably an issue over which the trial court exercises sound discretion. Hence, that specific decision is reviewed for an abuse of discretion.

But the issues arising during the adjudicatory process necessary to reach the point where the trial court makes a discretionary decision to modify alimony often involve standards of review other than abuse of discretion.[3] During that adjudicatory process, the party seeking a modification must file a pleading that adequately alleges a claim for modification. Such a claim essentially requires the party to allege and the trial court to decide that (1) there has been a substantial change in circumstances, (2) the change was not contemplated at the time of the final judgment of dissolution, and (3)

---

[3]As Judge Padovano explains, the correct standard of review is typically determined by the "nature of the adjudication" or the function that the trial court is performing at the time of the alleged error. It is rarely determined by the topic or area of law in which the decision making occurs. Philip J. Padovano, Florida Appellate Practice § 19.3, at 358-59 (2013 ed.).

the change is sufficient, material, permanent, and involuntary.[4]  See Eisemann v. Eisemann, 5 So. 3d 760, 762 (Fla. 2d DCA 2009); see also Pimm v. Pimm, 601 So. 2d 534, 536 (Fla. 1992).  Whether the pleading is legally sufficient in its allegations of this claim, as with all pleadings, is a legal issue reviewed de novo.  See Murphy v. Bay Colony Prop. Owners Ass'n, 12 So. 3d 924, 926 (Fla. 2d DCA 2009).

The party seeking a modification must then present evidence necessary for the trial court to make factual findings or determinations that are essential for relief. Those essential findings of fact, both express and implied, are reviewed to assure that they are supported by competent, substantial evidence.  For example, the trial court in a modification proceeding needs to make factual determinations about the nature and extent of any change in factual circumstances.  If disputed, it may need to make a factual decision about whether the change was anticipated at the time of the final judgment.

Finally, the trial court needs to decide whether the proven change is substantial and whether the change was sufficient, material, permanent, and involuntary.  These are legal conclusions, not factual determinations, and they are reviewed by the appellate court under a type of de novo review that is actually the normal second step in a "mixed" review.

---

[4]We note that this court recently observed "that involuntariness of income loss may no longer be a bright-line requirement for alimony modification" and that some decisions that result in a spouse's income loss may be evaluated to determine if the decision was reasonable.  Wilson v. Wilson, 37 So. 3d 877, 881-82 (Fla. 2d DCA 2010). Unlike in Wilson, here there was evidence that Mr. Jarrard's loss of income was involuntary.

A "mixed" standard of review is not an invitation for lawyers and judges to engage in mixed-up logic. It is usually employed when the function the trial court is performing requires that court to apply a rule of law to a set of facts that are not undisputed.[5] The trial court's decision occurs essentially at the logical intersection between a finding of the facts and a decision as to the legal outcome of the issue that is dependent upon those facts.

In cases concerning modification or termination of alimony, this "mixed" standard has best been developed in cases involving modifications of alimony based on the existence of a supportive relationship. See Buxton v. Buxton, 963 So. 2d 950 (Fla. 2d DCA 2007) (applying a mixed standard of review on the mixed questions of law and fact concerning the trial court's denial of the former husband's motion to reduce or terminate alimony, which was based upon the trial court's conclusion that the former wife was not engaged in a "supportive relationship" under section 61.14(1)(b), Florida Statutes (2005)); see also King v. King, 82 So. 3d 1124 (Fla. 2d DCA 2012) (applying the standards of review espoused in Buxton). We conclude that the mixed standard applied by this court in Buxton applies to a broader range of cases in which parties, such as Mr. Jarrard in this case, seek modification of alimony under section 61.14, Florida Statutes (2012).

A mixed standard of review is actually performed by an appellate court as a sequence of two or more distinct reviews. Most commonly, the appellate court

---

[5]If the facts are undisputed, as with an order granting summary judgment, the decision is reviewed de novo. See Hornfischer v. Manatee Cnty. Sheriff's Office, 136 So. 3d 703, 706 (Fla. 2d DCA 2014).

reviews the findings of fact to assure they are supported by competent, substantial evidence. Occasionally, the appellate court is called upon to review de novo the trial court's decision as to applicable law. In so doing, the appellate court provides only a modest presumption of correctness to the trial court because the issue is almost always one that is exclusively a pure issue of law upon which the trial court has no greater insight than the appellate court. Finally, the appellate court reviews the trial court's legal conclusion, which was reached by the application of the law to the facts. As stated earlier, the review of this legal conclusion is a form of de novo review.[6] However, unlike a review of the trial court's decision as to the correct law to apply, the legal conclusion is reviewed with a recognition that the factual component was determined by the trial judge and that all factual determinations may not have been expressly stated in the order. The interrelationships between the findings of fact and the conclusions of law is what makes the standard of review "mixed."

Especially in the context of a dissolution of marriage or modification proceeding,[7] the trial court's legal conclusion is made under circumstances in which that

_____

[6]One of the most common "mixed" reviews involves suppression orders in criminal cases. "We apply a mixed standard of review concerning the ruling on [a] suppression motion. We review the findings of fact for support by competent, substantial evidence in the record. See State v. Clark, 986 So. 2d 625, 628 (Fla. 2d DCA 2008). As to the trial court's conclusions on mixed questions of law and fact and on pure questions of law, we conduct a de novo review." State v. Townsend, 40 So. 3d 103, 105 (Fla. 2d DCA 2010). Even though a criminal suppression issue is very different from a decision on modification of alimony, because the trial court's decision-making process in these two contexts is quite similar, our standards of review in these two contexts are quite similar.

[7]The fact that dissolution has its origins in chancery and not law also argues for greater deference in the process of appellate review. See § 61.011, Fla. Stat. (2012).

court may have a better vantage point from which to make a decision.[8]  The appellate court's deference is also heightened by the risk that it will actually reevaluate the evidence in the guise of making a de novo legal review.  See Shaw v. Shaw, 334 So. 2d 13 (Fla. 1976).  Thus, the trial court's legal conclusion is undoubtedly reviewed with a greater deference to the presumption that the trial court has made a correct ruling on the legal issue.  This deference does not transform the review into a species of "abuse of discretion," but it does alter the character of the de novo review from that performed on a pure issue of law.

In a case like this one, in which a trial court decides that a party has not met its burden of proof and persuasion as to one or more of the grounds that would allow for a modification, our review of this essentially negative decision is arguably somewhat different from the review we would give to a judgment granting affirmative relief following a nonjury trial.  We first review the evidence to determine whether there is competent, substantial evidence in the record that would support the movant's claim. See In re Estate of Sterile, 902 So. 2d 915 (Fla. 2d DCA 2005).  If the evidence would not require the trial court, for example, to find a "change" as a factual matter or would not require a factual finding that the change was unexpected, we could affirm the trial court without even reaching any issue addressing the legal conclusion that the change was substantial.

However, when there is competent, substantial evidence that would support a factual determination allowing the trial court to decide to grant relief, the review must take a second step.  The existence of that quantity of proof does not

---

[8]Philip J. Padovano, Florida Appellate Practice §§ 19.2, 19.4 (2013 ed.).

automatically empower this court on a de novo review of the legal conclusion to compel the trial court to proceed to the stage of making a discretionary decision on the issue of modification. Instead, we must defer to the trial court on all matters of credibility and accept all disputed evidence and reasonable inferences therefrom in the light most favorable to sustaining the trial court's ruling. Cf. Van v. Schmidt, 122 So. 3d 243 (Fla. 2013) (discussing the deference to trial court findings of fact when reviewing de novo a decision to grant a new trial based on manifest weight).

After this court has evaluated the evidence in this deferential light, the legal issues to be decided de novo are whether the trial court, in light of the evidence, was required to reach the legal conclusion that the change was substantial and was sufficient, material, permanent, and involuntary. In other words, was the trial court required to conclude that the movant had established his burden on these legal issues?

### III. APPLYING THE STANDARD OF REVIEW IN THIS CASE

The record in this case contains competent, substantial evidence that would support Mr. Jarrard's claim of a substantial change in circumstances. The evidence as to the amount of his income and its fluctuations is virtually undisputed. His employment income had been reduced by more than 50 percent, and his support obligation had jumped to 70 percent of that income. This is not a situation in which the initial income was extremely high or where other assets existed to protect this couple from the loss of income. In Dippold v. Dippold, 712 So. 2d 1205 (Fla. 5th DCA 1998), a change similar to the change here not only was found to be substantial, but it also required the trial court to reduce the support by more than 20 percent. Ms. Jarrard has cited no case in which a trial court or an appellate court reached a legal conclusion that

- 10 -

a change of this magnitude was not substantial. On de novo review, considering the evidence most deferentially to the trial court, we conclude that the trial court was required to reach the legal conclusion that the change here was substantial.

The record in this case also contains competent, substantial evidence that would support Mr. Jarrard's claim that the change in circumstances was sufficient, material, permanent, and involuntary. The actual legal dispute in this case focuses on whether the change was permanent. As to that issue, it was undisputed that Mr. Jarrard had been earning the substantially reduced income for about two years at the time of the hearing. The wide fluctuations in his income make predicting the future a difficult task. No statistical analysis of Mr. Jarrard's income would support a factual conclusion that his income was on a rapid rise that would return it to its earlier levels. Mr. Jarrard did not testify that other more experienced employees in his new position were making incomes substantially higher than his own. The fact that he is approaching retirement age, at a minimum, gives him less time to achieve a greater income.

There may be no period of time that is conclusively "permanent" for this purpose, but the Fourth District has held that a severe reduction in income for "nearly a year, with no end in sight," established permanency in Perez v. Perez, 973 So. 2d 1227, 1232 (Fla. 4th DCA 2008). The trial court in this case seemed to believe that Mr. Jarrard was required to prove what his income would be over the upcoming years before this two-year decline could be treated as a permanent event. In light of the inherent uncertainty in predicting future economic developments and given the remaining undisputed facts in this case, that was an improper burden to place upon Mr. Jarrard. Cf. Freeman v. Freeman, 615 So. 2d 225 (Fla. 5th DCA 1993) (for modification

of child support, requiring a showing that a change in circumstances is "forever" would impose an impossible burden). We conclude that on this record the trial court was required to reach the legal conclusion that the change in circumstances was permanent.

We reverse and remand for the trial court to exercise its discretion. Our mandate does not prevent the trial court from updating the evidence on remand. We observe that the calculation of arrearage was based on a continuation of alimony at the $4200 per month level. If the trial court decides to modify alimony, section 61.14(1)(a) authorizes a modification retroactive to the date of the filing of the action. See also Thyrre v. Thyrre, 963 So. 2d 859, 861-62 (Fla. 2d DCA 2007). In this case, section 61.14(1)(a) would appear to give the trial court discretion to adjust alimony to the date of the filing of the second amended supplemental petition.

Affirmed in part, reversed in part, and remanded.


MORRIS and BLACK, JJ., Concur.