NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

ANTHONY E. DOGODA, JR.,                )
                                       )
            Appellant,                 )
                                       )
v.                                     )      Case No.  2D16-4447
                                       )
AMY DOGODA,                            )
                                       )
            Appellee.                  )
                                       )
_____ )

Opinion filed December 6, 2017.

Appeal from the Circuit Court for Sarasota
County; Frederick P. Mercurio, Judge.

Peter J. Mackey and B. Kyle Stalnaker of
Mackey Law Group, P.A., Bradenton, for
Appellant.

Kenneth M. Poole, Jr. of Syprett, Meshad,
Resnick, Lieb, Dumbaugh, Jones, Krotec &
Westheimer, P.A., Sarasota, for Appellee.


LaROSE, Chief Judge.

        Anthony E. Dogoda, Jr. appeals an order denying his supplemental

petition to modify alimony.  We have jurisdiction.  See Fla. R. App. P. 9.030(b)(1)(A).

The trial court abused its discretion in concluding that the filing date of the final

dissolution judgment was the operative date from which to assess whether a

subsequent substantial change in circumstances justified an alimony modification. Consequently, we reverse.[1]

## Background

The parties married in October 1991. Mr. Dogoda filed for divorce in March 2013. Eventually, the parties entered into a marital settlement agreement (MSA) that resolved all outstanding issues between them. As relevant here, the MSA obligated Mr. Dogoda to pay monthly durational alimony of $1250.

The MSA provided that it "shall become effective and enforceable when both parties have executed it." The MSA was fully executed by September 19, 2014. Unfortunately, the trial court did not enter a final judgment of dissolution until December 30, 2014. While awaiting entry of the final judgment, Mr. Dogoda made the required alimony payments called for by the MSA.

Mr. Dogoda was a firefighter. During the time between execution of the MSA and entry of the final judgment, he engaged in fire department physical fitness drills. Because of his "horrible" performance, he considered retirement. He asked the City of Sarasota Firefighter's Pension Board about possible 2015 retirement dates. Mr. Dogoda had explored his retirement options yearly for the previous ten years. In early December 2014, the Pension Board approved Mr. Dogoda's retirement, effective January 23, 2015.

Three months after his retirement, Mr. Dogoda petitioned for a downward modification of his alimony obligation. He cited to his reduced retirement income, which was due to the equitable distribution of his fire department retirement pension, coupled

---

[1]Because our resolution of this issue moots consideration of Mr. Dogoda's other appellate issue, we do not address it.

- 2 -

with the financial hardship caused by his monthly alimony payment. After an evidentiary hearing, the trial court entered an order denying Mr. Dogoda's petition.

The trial court found that Mr. Dogoda's "retirement was contemplated prior to the actual [final judgment] being entered [on] December 30, 2014." More specifically, the trial court observed that "Mr. Dogoda took a step to activate or put into place his retirement effective January, 2015[;] . . . he took the step to have the Pension Board approve his retirement."

Nonetheless, the trial court characterized Mr. Dogoda's retirement as "voluntary in nature" with "nothing about him retiring or exercising his retirement option to be spiteful or in any way to thwart Ms. Dogoda from receiving any benefits to which she is entitled." Rather, the trial court believed that it was constrained from awarding relief because Mr. Dogoda decided to retire before entry of the final judgment. Specifically, the trial court lamented that if it "could ignore the second prong of the three-prong test for modification of alimony, the court would have granted Mr. Dogoda's [petition]."

## Analysis

We review the trial court's order under an abuse of discretion standard. See Driggers v. Driggers, 127 So. 3d 762, 763 (Fla. 2d DCA 2013). Under Florida law,

> [w]hen the parties enter into an agreement for payments for . . . alimony . . . in connection with a proceeding for dissolution . . . and the circumstances or the financial ability of either party changes . . . either party may apply to the circuit court . . . for an order decreasing or increasing the amount of . . . alimony, and the court has jurisdiction to make orders as equity requires, with due regard to the changed circumstances or the financial ability of the parties . . . .

§ 61.14(1)(a), Fla. Stat. (2015).

- 3 -

The petitioner must show "that (1) there has been a substantial change in circumstances, (2) the change was not contemplated at the time of the final judgment of dissolution, and (3) the change is sufficient, material, permanent, and involuntary." Jarrard v. Jarrard, 157 So. 3d 332, 336 (Fla. 2d DCA 2015) (citing Eisemann v. Eisemann, 5 So. 3d 760, 762 (Fla. 2d DCA 2009)); see also Pimm v. Pimm, 601 So. 2d 534, 536 (Fla. 1992). We know that when a party seeks to modify an existing support order, "the proof required to modify a settlement agreement and the proof required to modify an award established by court order shall be the same." § 61.14(7). Thus, Mr. Dogoda bears no heavier burden because the alimony award was instituted through an MSA rather than by court order.

In Pimm, 601 So. 2d at 535, a case involving the retirement of the payor spouse, the Florida Supreme Court held that retirement, if reasonable, can support the finding of a substantial change in circumstances. The reasonableness of the voluntary retirement depends on "the payor's age, health, and motivation for retirement, as well as the type of work the payor performs and the age at which others engaged in that line of work normally retire." Id. at 537; see also Wilson v. Wilson, 37 So. 3d 877, 881 (Fla. 2d DCA 2010) ("In Pimm, the supreme court held that voluntary retirement is a change of circumstances that may be considered, together with other relevant factors, in determining whether to modify alimony if the retirement is reasonable."). The trial court found Mr. Dogoda's retirement to be reasonable, and Ms. Dogoda does not challenge this finding on appeal.

Key to the disposition of the case before us is whether, under Pimm's second prong, Mr. Dogoda's retirement "was . . . contemplated at the time of final judgment of dissolution." Pimm, 601 So. 2d at 536. Recall the unusual factual scenario

- 4 -

before us: between the date the parties executed the MSA and entry of the final judgment of dissolution, Mr. Dogoda decided to retire. Ms. Dogoda contends that Mr. Dogoda's retirement cannot serve as a basis for alimony modification because it was contemplated before entry of the final judgment. Indeed, the Pension Board approved his retirement several weeks before entry of the final judgment.

Ms. Dogoda's entreaty ignores the language of section 61.14(1)(a), which allows for a party to pursue modification "[w]hen the parties enter into an agreement for payments for . . . alimony . . . in connection with a proceeding for dissolution . . .and the circumstances or the financial ability of either party changes." That is, under the statute, the touchstone for modification is whether, after the parties entered into the MSA, their respective circumstances or financial abilities have changed. Critically, the statute omits, and therefore, does not condition modification, upon the date of the trial court's ratification of the MSA. See Villanueva v. State, 200 So. 3d 47, 52 (Fla. 2016) ("[A] matter that is not covered by a statute is to be treated as intentionally not covered.").

We reject Ms. Dogoda's argument that Pimm's second prong establishes a bright-line rule. "Section 61.14 . . . extends jurisdiction to the trial courts to 'make orders as equity requires' to modify an award of alimony." Mouton v. Mouton, 590 So. 2d 40, 41 (Fla. 2d DCA 1991) (quoting § 61.14(1), Florida Statues (1989)). Consistent with notions of equity is the consideration of whether the parties contemplated the substantial change in circumstances and accounted for such a change when they agreed on the terms of the support award. See Mendes v. Mendes, 947 So. 2d 450, 452 (Fla. 4th DCA 2006) ("The trial court based its decision [to deny the ex-husband's petition for alimony reduction] on the well-established principle that modification may not be based upon factors affecting income known to the parties at the time a final judgment

- 5 -

is entered."). After all, "if the likelihood of a particular occurrence was one of the factors which the court or the parties considered in initially fixing the award in question, it would be grossly unfair subsequently to change the result simply because the anticipated event has come to pass." Jaffee v. Jaffee, 394 So. 2d 443, 445 (Fla. 3d DCA 1981). We find the reasoning in Jaffee both intuitive and persuasive.

Consistent with Jaffee, the relevant analysis of the second prong of Pimm begins with what the parties contemplated at the time they agreed to the terms of the MSA, not the arbitrary date when the trial court entered the final judgment. Mr. Dogoda made his retirement decision after execution of the MSA. Consequently, despite his annual inquiries concerning possible retirement dates, he and Ms. Dogoda necessarily failed to contemplate his retirement when they entered into the MSA. Cf. Allison v. Allison, 554 So. 2d 1196, 1198 (Fla. 1st DCA 1989) ("A possibility that income will decrease is not knowledge that it will do so."). Equity demands that Mr. Dogoda's subsequent decision to retire not be held against him in his attempts to modify his alimony obligation.

We find further support for our position in the explicit language of the MSA. "Settlement agreements are to be interpreted in accordance with laws governing contracts. Thus, absent evidence of the parties' intent to the contrary, the unambiguous language of the agreement should be interpreted according to its plain meaning." Johnson v. Johnson, 848 So. 2d 1272, 1273 (Fla. 2d DCA 2003) (citation omitted). The MSA specifically provided that it was to take effect upon its execution by both parties. Consistent with that provision and after the parties signed the MSA, Mr. Dogoda began to remit his monthly alimony payments to Ms. Dogoda.

In cases involving an MSA, the effective date of the agreement establishes the date to which a trial court should look in determining whether a substantial change in circumstances was contemplated by the parties. This is especially so in cases like this one where there is an extended delay between execution of the MSA and entry of the final judgment. Were we to adopt Ms. Dogoda's position, we would be effectively, and needlessly, foisting language upon the MSA that the contracting parties did not include, and which would change the terms of the parties' agreement. We are loathe to do so.

## Conclusion

For the reasons set forth above, we reverse the order denying Mr. Dogoda's petition seeking modification of alimony. We remand for further proceedings consistent with this opinion.

Reversed and remanded.

BLACK and ROTHSTEIN-YOUAKIM, JJ., Concur.