DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**MARJORIE GELBER,** f/k/a **MARJORIE GELBER BRYDGER,**
Appellant,

v.

**GORDON CHARLES BRYDGER,**
Appellee.

No. 4D17-295

[June 6, 2018]

Appeal and cross-appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Timothy L. Bailey, Judge; L.T. Case No. FMCE 03-012331 (41/93).

Nancy Little Hoffmann of Nancy Little Hoffmann, P.A., Fort Lauderdale, for appellant.

Barry I. Finkel, Fort Lauderdale and Carin M. Porras of Brydger & Porras, LLP, Fort Lauderdale, for appellee.

GROSS, J.

This is a case where the former husband sought a downward modification of alimony once his former wife reached the age of 59 ½ and could access retirement accounts without penalty. We hold that a former spouse's ability to access substantial retirement accounts without penalty is one factor which may be considered as part of the total circumstances in determining if there has been a sufficient change to warrant a downward modification of alimony, provided that a marital settlement agreement or final judgment has not already taken the retirement accounts into consideration in setting alimony.

After a 27-year marriage, Marjorie Gelber and Gordon Brydger divorced on August 31, 2004. The final judgment incorporated a marital settlement agreement ("MSA") which required the former husband to pay $6,375 per month in permanent periodic alimony until either party died or the former wife remarried.

Under the MSA, as part of equitable distribution, the former wife received various retirement and annuity accounts (collectively, "retirement accounts"). Nothing in the MSA required the former wife to invade the retirement accounts for income. The MSA did not take into consideration the eventual income that the former wife would receive from the retirement accounts, without penalty, once she reached retirement age. The MSA made the alimony obligation "modifiable in accordance with Florida Statutes."

In 2014, the former husband filed a supplemental petition for modification of alimony. The former husband had not yet retired and had the ability to pay the alimony required by the MSA. Nevertheless, he sought modification because the former wife's retirement accounts had appreciated and the former wife had reached the age of 59 ½, so she could take distributions from the accounts without penalty.

At trial, the former husband focused on the former wife's financial circumstances. Through the MSA at the time of dissolution, the former wife received the $657,327 in retirement accounts as well as over $500,000 in other investments. Her 2005 monthly income was $3,437 from wages and non-retirement investment accounts. By 2014, the retirement accounts had appreciated to $1,028,965 and her retirement accounts and investments totaled $1,600,000 for which the stipulated return was 3.75%. This yielded a monthly income from investment accounts and retirement accounts of $5,000 per month. In addition to income available from investment and retirement accounts, the former wife had social security disability income of $1,027 per month and pension benefits of $675 per month. Her monthly need was $7,674.

In an amended final judgment, the circuit court found that the former husband demonstrated a substantial change in the former wife's income from $3,400 per month in 2004 to $7,100 per month in 2014 upon turning age 59 ½ when she could access the income from her retirement accounts without penalty. The court found that the change in available income from 2004 to 2014 was "unanticipated" because "the $5,000 a month generated from her retirement assets as of 2014 was not and could not be attributed to her in 2004."

The court found that all of the witnesses testified that the former wife's income from her retirement accounts was not considered or factored into the alimony amount when it was fixed in the MSA.

The court concluded that the former wife's need for alimony was $1,735 per month and reduced the former husband's alimony obligation to that amount, retroactive to the date of the petition.

We write to address the former wife's argument that her ability to access the retirement accounts without penalty at age 59 ½ was not an unanticipated change in circumstances. She argues that such a known event is "foreseeable" and that "[a]limony may not be modified for anticipated changes in circumstances."

As a prerequisite to the modification of an alimony award, the notion of an "anticipated" change in circumstances has crept into Florida law over the years. We often see it argued, as in this case, to preclude changes that were "foreseeable" at the time of the original final judgment. The word choice of "anticipated" has been unfortunate because it has transformed a very different concept into something that it is not.

Concerning modifications of support, maintenance, and alimony agreements or orders, section 61.14(1)(a), Florida Statutes (2017), is primarily concerned with equity and fairness. In the part pertinent to this case, the statute provides:

> When the parties enter into an agreement for payments for . . . alimony. . . and the circumstances or the financial ability of either party changes . . . either party may apply to the circuit court...for an order decreasing or increasing the amount of . . . alimony, and the court has jurisdiction to make orders as equity requires, with due regard to the changed circumstances or the financial ability of the parties . . . decreasing, increasing, or confirming the amount of . . . alimony provided for in the agreement or order.

The statute refers to changed circumstances and financial ability and permits the court to enter orders "as equity requires." The statute makes no reference to a change being "unanticipated."

The term "anticipated change" was injected into Florida law by cases that used the term synonymously to describe something that had been "contemplated and considered" when the original judgment or agreement had been entered. For example, in *Jaffee v. Jaffee*, the court correctly stated the principle "that an alimony award may not be modified because of a 'change' in the circumstances of the parties which was contemplated and considered when the original judgment or agreement was entered." 394 So. 2d 443, 445 (Fla. 3d DCA 1981). *Jaffe* cogently explained the reason for this rule:

> The reason for this doctrine is an obvious one: if the likelihood of a particular occurrence was one of the factors which the court or the parties considered in initially fixing the award in question, it would be grossly unfair subsequently to change

the result simply because the anticipated event has come to pass.

*Id.* In its refusal to reconsider something already "contemplated and considered" by the parties or the court in a family case, the doctrine described by *Jaffee* is akin to the doctrines of res judicata[1] or collateral estoppel.[2]

As an opinion subheading to the portion of the case containing this discussion, the *Jaffee* court used this: "No Unanticipated Change of Circumstances." The choice of adjective was unfortunate, since "anticipate" conveys the notion of something that will happen in the future.[3] The legal principle explored in *Jaffee* concerned matters that had been contemplated or considered in the past, in a judgment or agreement; it does not penalize a party for failing to raise a matter that had not yet happened. Two of the cases cited in *Jaffee* have language consistent with its statement of the rule. *See Withers v. Withers*, 390 So. 2d 453, 455 (Fla. 2d DCA 1980) (indicating that a substantial change of circumstances is one "which circumstances must not have been present and contemplated at the time of the final judgment"); *Ashburn v. Ashburn*, 350 So. 2d 1158, 1158 (Fla. 2d DCA 1977) (stating that a change of circumstances "is not a substantial change if it had been contemplated in the final judgment.").[4]

Some cases have cited to the subheading in *Jaffee* rather than the rule it explains. *See, e.g., Penland v. Penland*, 442 So. 2d 1054, 1055 (Fla. 1st DCA 1983) (stating that "[a]limony may not be modified for anticipated changes in circumstances"). This has opened the door for foreseeability

---

[1] "Res judicata is a judicial doctrine used to bar parties from relitigating claims previously decided by a final adjudication on the merits." *W & W Lumber of Palm Beach, Inc. v. Town & Country Builders, Inc.,* 35 So. 3d 79, 82–83 (Fla. 4th DCA 2010).

[2] "For the doctrine of collateral estoppel to apply to bar relitigation of an issue, five elements must be present: '(1) an identical issue must have been presented in the prior proceedings; (2) the issue must have been a critical and necessary part of the prior determination; (3) there must have been a full and fair opportunity to litigate that issue; (4) the parties in the two proceedings must be identical; and (5) the issues must have been actually litigated.'" *Criner v. State,* 138 So. 3d 557, 558 (Fla. 5th DCA 2014) (quoting *Cook v. State,* 921 So. 2d 631, 634 (Fla. 2d DCA 2005)).

[3] "Anticipate" is commonly defined as "to realize beforehand; foretaste or foresee." THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 64 (1967).

[4] Of the cases cited in *Jaffee, Waller v. Waller* employs a foreseeability concept in holding a change of circumstances to be insufficient for modification because the change was "one which can reasonably be said to have been anticipated." 212 So. 2d 352, 353 (Fla. 3d DCA 1968).

arguments in modification proceedings, untethered from the underlying legal principle.

In *Pimm v. Pimm*, the Florida Supreme Court did not employ an "anticipated/foreseeability" analysis in deciding that a former spouse's retirement is a change of circumstances that may trigger a modification of alimony. 601 So. 2d 534 (Fla. 1992). Citing to *Withers*, the court restated the *Jaffee* rule that a substantial change of circumstances sufficient to justify a modification must be a "change . . . not contemplated at the time of final judgment of dissolution." *Id.* at 536. The court expressly held that the failure of an MSA or final judgment to consider what would happen upon a spouse's retirement "should not preclude consideration of a reasonable retirement as part of the total circumstances in determining if sufficient changed circumstances exist to warrant a modification of alimony." *Id.* at 537. Retirement is certainly something that can be "anticipated" during a divorce. Yet the Supreme Court focused not on what the parties should have anticipated but on what was actually considered in the property settlement agreement entered 13 years before the motion for modification. *Id.*

Like the situation in *Pimm*, the MSA in this case was silent as to what would happen once the former wife reached an age where she could access the funds in retirement accounts without penalty. This was not a case where the retirement accounts had been taken into consideration to determine the former wife's current income in a final judgment or MSA. *Compare, Niederman v. Niederman*, 60 So. 3d 544 (Fla. 4th DCA 2011).[5] The MSA made alimony "modifiable in accordance with Florida Statutes" and section 61.14(1)(a) makes alimony modifiable "as equity requires" where circumstances have changed. Finding no abuse of discretion, we affirm the trial court's order granting modification, including the issues raised on the cross-appeal.

WARNER and TAYLOR, JJ., concur.

* * *

***Not final until disposition of timely filed motion for rehearing.***

---

[5] We distinguish *Kreiser v. Kreiser*, 505 So. 2d 40 (Fla. 4th DCA 1987), relied upon by the former wife. There, this court rejected a former husband's attempt to eliminate his alimony obligation. Few facts are set forth in the opinion, but it appears that we found that the "unwritten agreement" "recited into the record" contemplated that the wife would receive corporate stock which would provide the wife with additional assets and income. *Id.* at 41. Read in this way, *Kreiser* is consistent with *Pimm* and the rule elaborated upon in *Jaffee.*