DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

JOHN-CHARLES ALLAIRE,

Appellant,

v.

BARBARA SILVA ALLAIRE,

Appellee.

No. 2D22-2804

_____

September 15, 2023

Appeal from the Circuit Court for Pasco County; Joshua Riba, Judge.

John-Charles Allaire, pro se.

Jessica Chery and Russell G. Marlowe of Russell G. Marlowe, PA, New Port Richey, for Appellee.

LaROSE, Judge.

John-Charles Allaire (Former Husband) appeals the order denying his amended supplemental petition to modify alimony. We have jurisdiction. *See* Fla. R. App. P. 9.030(b)(1)(A). Former Husband established his entitlement to modification. Thus, we reverse.

## **Background**

Former Husband and Barbara Silva Allaire (Former Wife) divorced in 2016. Their marital settlement agreement (MSA) required Former Husband to pay staggered durational alimony. By February 2018, the monthly amount was $1,500.

The MSA also provided that the trial court could modify alimony based on a substantial change in circumstances. *See* § 61.08(7), Fla. Stat. (2016) ("The amount of an award of durational alimony may be modified or terminated based upon a substantial change in circumstances in accordance with [section] 61.14.").

Former Husband owned an upholstery business; he upholstered dental chairs. His business had a contract with a single client, a used equipment seller. The business operated out of the client's premises.

On March 9, 2020, Governor DeSantis declared a public health emergency in Florida due to COVID-19. *See Fla. Exec. Ord. No. 20-52* (Mar. 9, 2020). On March 30, 2020, he issued *Executive Order Number 20-91*, requiring that "all persons in Florida . . . limit their movements and personal interactions outside of their home to only those necessary to obtain or provide essential services or conduct essential activities." *See FAQs for Exec. Ord. 20-91 Essential Services and Activities during Covid-19*, https://www.flgov.com/wp-content/uploads/covid19 /Exec%20Order%2020-91%20FAQs.pdf (Apr. 3, 2020) (explaining that if a business is not an essential service, it must close its physical location to customers). Former Husband's upholstery business was not an essential service. Consequently, he ceased operations.

In April 2020, Former Husband, pro se, dashed off a supplemental petition to modify his alimony obligation. Allegedly, Former Husband's sole client stopped doing business with him. He maintained that "[t]he pandemic ha[d] forced a closure of [his] business, leaving [him] without income."

In July 2021, Former Husband, through counsel, filed an amended supplemental petition. *See* § 61.14(1)(a), Fla. Stat. (2021). The substance of the amended petition remained the same: Former Husband

could not pay his monthly alimony obligation due to the closure of his business in the wake of public health safety protocols. He reported that "[i]n order to minimize the impact of the loss and not be left without anything . . . Former Husband . . . s[old] his upholstery equipment and signed a non-compete [agreement] with his former client." The non-compete agreement prevents him from upholstering dental chairs. Former Husband described the situation as a "hostile takeover"; the client hired his employees and gave him limited time to remove his equipment or sell it to the client. And, although he could continue to reupholster other furniture, Former Husband reported that he was "60 years old now and . . . [he did]n't have another startup in [him]. It's a huge amount of work to start another business, and it requires a lot of capital . . . ." On cross-examination, Former Husband further indicated that while he had experience in related upholstery fields, "it certainly didn't pay the same." To scratch out a living, he "began learning the insurance adjusting business." However, his income was "significantly lower than the income he had at the time of the [divorce]."

At a June 2022 Zoom hearing, the trial court denied the amended supplemental petition. In its written order, the trial court found that "Former Husband did have a change in circumstances with his employment, there is no question about that." Further, the trial court determined that Former Husband's sale of his equipment and signing of the non-compete agreement were "reasonable." The trial court recognized that Former Husband found himself "between a rock and a hard place" when his only client stopped doing business with him.

However, the trial court reasoned that Former Husband's financial downturn was not permanent. The trial court glibly explained that Former Husband could have "used his [upholstery] skills in another

3

capacity" because the non-compete agreement "only limited his reupholstering to dental chairs, so he could . . . use[] his skills in another capacity."

The trial court also expressed concern over the timing of the amended supplemental petition. Former Husband filed his initial petition "within a month of the Covid-related shutdowns." The trial court was perplexed that Former Husband sought relief so soon "without knowing whether this would be a permanent issue." A real conundrum; a veritable Schrödinger's cat[1] scenario.

The trial court found further that Former Husband's financial problems were foreseeable:

> It was not unforeseeable that the Former Husband lost his business when he ran his business with only one client. This Court believes it is entirely foreseeable that you may lose your only source of income if you run a business the way the Former Husband has.

The trial court also explained that Former Husband's change in income was insubstantial because "he is making about the same that he made at the time he agreed to pay alimony to . . . Former Wife."

Before us, Former Husband argues that he satisfied the test for modifying his alimony obligation. *See Driggers v. Driggers*, 127 So. 3d 762, 764 (Fla. 2d DCA 2013) ("Unquestionably, the final judgment of dissolution created a presumption that [the former husband] has the

_____

[1] "In a famous *gedanken* experiment of quantum mechanics, Schrödinger's cat remains suspended between life and death in a box, neither alive nor dead until the box is opened and uncertainty about the decay of a radioactive particle is resolved." *TKO Equip. Co. v. C & G Coal Co.*, 863 F.2d 541, 545 (7th Cir. 1988); *See also Cabantac v. Holder*, 736 F.3d 787, 792 n.8 (9th Cir. 2013) ("Schrödinger's cat, originating in quantum physics, is a symbol of something that exists in two contradictory states at the same time." (Murguia, J., dissenting)).

ability to pay alimony. He bears the burden to show that he can no longer pay due to changed circumstances."). He contends that the trial court misapprehended the law and misunderstood the financial affidavits. We agree.

### Analysis

> "[T]he appellate court's standard of review of an order modifying alimony is mixed." *Bauchman v. Bauchman*, 253 So. 3d 1143, 1146 (Fla. 4th DCA 2018) (citing *Jarrard v. Jarrard*, 157 So. 3d 332, 337 (Fla. 2d DCA 2015)). "The trial court's legal conclusions are reviewed de novo." *Id.* (citing *Jarrard*, 157 So. 3d at 337-38). As for the trial court's factual findings, the appellate court reviews the record to determine if they are supported by competent, substantial evidence. *See Golson v. Golson*, 207 So. 3d 321, 325 (Fla. 5th DCA 2016) (citing *Jarrard*, 157 So. 3d at 337).

*Befanis v. Befanis*, 293 So. 3d 1121, 1122-23 (Fla. 5th DCA 2020) (alteration in original).

Section 61.14(1)(a) allows a party to seek modification "[w]hen the parties enter into an agreement for payments for . . . alimony . . . in connection with a proceeding for dissolution . . . and the circumstances or the financial ability of either party changes." Specifically, "[t]o justify a modification of alimony, the moving party must establish: (1) a substantial change in circumstances; (2) that the change was not contemplated at the final judgment of dissolution; and (3) that the change is sufficient, material, permanent, and involuntary." *Eisemann v. Eisemann*, 5 So. 3d 760, 762 (Fla. 2d DCA 2009) (quoting *Antepenko v. Antepenko*, 824 So. 2d 214, 215 (Fla. 2d DCA 2002)). We note that Former Husband bears no heavier a burden simply because his alimony obligation was found in an MSA. *See* § 61.14(7) ("When modification of an existing order of support is sought, the proof required to modify a

settlement agreement and the proof required to modify an award established by court order shall be the same.").

## I.  Substantial Change in Circumstances

The trial court found that Former Husband's income when he petitioned for modification was "about the same" as when the parties divorced.  The record belies this finding.  Indeed, competent and substantial evidence supports Former Husband's claim of a substantial change in income.  *See Nangle v. Nangle*, 286 So. 3d 377, 379-80 (Fla. 4th DCA 2019) ("A key factor in determining whether a modification is warranted is determining whether, after the final judgment is entered, the parties 'financial abilities have changed.' " (quoting *Dogoda v. Dogoda*, 233 So. 3d 484, 487 (Fla. 2d DCA 2017))).

Seemingly, the trial court misread the Former Husband's financial affidavits.  Former Husband's 2015 financial affidavit reported a monthly gross base salary of $3,033.  His 2022 financial affidavit shows a gross monthly income of $3,354.  Unfortunately, the trial court overlooked the portion of the 2015 financial affidavit indicating that Former Husband supplemented his monthly base pay with shareholder distributions of $2,500.  Thus, the 2015 financial affidavit actually reflected a gross monthly income of $5,769 and a net monthly income of $4,502.

In contrast, Former Husband's 2022 financial affidavit included no shareholder distributions.  Thus, his gross monthly income totaled $3,354; his net monthly income was substantially reduced to $968.45. In similar circumstances, we have found a substantial change in circumstances.  *See Driggers*, 127 So. 3d at 763 ("Mr. Driggers demonstrated an uncontemplated substantial change in circumstances that was not voluntary or temporary.  He established a forty-percent drop in his business income."); *Antepenko*, 824 So. 2d at 215 ("[T]he thirty-

6

eight percent decrease shown here clearly meets the 'substantial change in circumstances' test.").

## II.   Contemplated Change (Foreseeability is Immaterial)

Because Former Husband's business relied on one client, the trial court reasoned that it was foreseeable that the loss of that client would be devasting.

The trial court conflates "contemplated" with "foreseeability." *See Bauchman v. Bauchman,* 253 So. 3d 1143, 1147 (Fla. 4th DCA 2018) ("Over the years . . . courts have confused 'anticipated' and 'foreseeable' circumstances to mean that such circumstances were 'contemplated and considered' at the time the original judgment was entered. 'The word choice of "anticipated" has been unfortunate because it has transformed a very different concept into something that it is not.' " (quoting *Gelber v. Brydger,* 248 So. 3d 1170, 1172 (Fla. 4th DCA 2018))). Section 61.14(1)(a) "makes no reference to a change being 'unanticipated.' " *Gelber,* 248 So. 3d at 1172. Rather, "an alimony award may not be modified because of a 'change' in the circumstances of the parties which was contemplated and considered when the original judgment or agreement was entered." *Jaffee v. Jaffee,* 394 So. 2d 443, 445 (Fla. 3d DCA 1981); *See also Bauchman,* 253 So. 3d at 1148 ("We find the trial court erred in failing to consider former husband's impending retirement as a substantial change in circumstances, as no evidence was presented to show the parties considered former husband's future retirement when the MSA was entered."); *Gelber,* 248 So. 3d at 1174 ("[T]he MSA in this case was silent as to what would happen once the former wife reached an age where she could access the funds in retirement accounts without penalty. This was not a case where the retirement accounts had been

7

taken into consideration to determine the former wife's current income in a final judgment or MSA.").

The trial court's "foreseeability" analysis should play no role in assessing whether the parties contemplated the loss of the client when they entered into the MSA. *See Canakaris v. Canakaris*, 382 So. 2d 1197, 1202 (Fla. 1980) ("Where a trial judge fails to apply the correct legal rule, . . . the action is erroneous as a matter of law. This is not an abuse of discretion."); *see also Driggers*, 127 So. 3d at 763 ("We review the trial court's findings regarding modification of alimony for an abuse of discretion.").

Nothing in our record suggests that the parties contemplated the closing of Former Husband's business, let alone the termination of the only contract sustaining that business. *Cf. Kamenski v. Kamenski*, 15 So. 3d 842, 843 (Fla. 2d DCA 2009) (reversing trial court's denial of former husband's petition seeking a reduction in his alimony obligation where "neither the evidence presented nor the final judgment itself established that the parties contemplated that [former wife] would experience an income increase of that magnitude"). Certainly, the MSA is silent on this point. And, we have observed that alimony modification requires "consideration of whether the parties contemplated the substantial change in circumstances and accounted for such a change when they agreed on the terms of the support award." *Dogoda*, 233 So. 3d at 487; *see, e.g.*, *Mendes v. Mendes*, 947 So. 2d 450, 452 (Fla. 4th DCA 2006) ("The trial court based its decision [to deny the ex-husband's petition for alimony reduction] on the well-established principle that modification may not be based upon factors affecting income known to the parties at the time a final judgment is entered.").

Yet, they contemplated that alimony would be "modifi[able] . . . based upon a substantial change in circumstances." *See Gelber*, 248 So. 3d at 1174 ("[T]he MSA . . . was silent as to what would happen once the former wife reached an age where she could access the funds in retirement accounts without penalty. This was not a case where the retirement accounts had been taken into consideration to determine the former wife's current income in a final judgment or MSA."). The trial court employed an incorrect legal standard.

### III. Change was Permanent & Involuntary

We now address the trial court's finding that Former Husband's financial downturn was not permanent. The trial court surmised that Former Husband could have just taken another upholstery job. And, insofar as the trial court's rationale suggests that Former Husband's change in circumstances was voluntary, we address that issue, too.

We have previously observed that

> a severe reduction in income for "nearly a year, with no end in sight," established permanency . . . . The trial court in this case seemed to believe that Mr. Jarrard was required to prove what his income would be over the upcoming years before this two-year decline could be treated as a permanent event. In light of the inherent uncertainty in predicting future economic developments and given the remaining undisputed facts in this case, that was an improper burden to place upon Mr. Jarrard.

*Jarrard v. Jarrard*, 157 So. 3d 332, 339 (Fla. 2d DCA 2015) (quoting *Perez v. Perez*, 973 So. 2d 1227, 1232 (Fla. 4th DCA 2008)).

Here, Former Husband sought modification in April 2020 due to the closure of his business. He reported having no income at that time. Leading up to the June 2022 modification hearing, Former Husband sold his upholstery equipment, signed a non-compete agreement, and took up new employment as an insurance adjuster with a reduced income. As

9

his financial affidavit reflects, Former Husband saw a forty-one percent decrease in his gross monthly income and a seventy-eight percent decrease in his net monthly income commencing in April 2020, compared to his financial situation at the time of dissolution in 2016. This sustained change was sufficiently permanent. Although the trial court was concerned with the timing of Former Husband's petition, the record demonstrates that at the time of the hearing, his business had been closed and his reduced income had lasted for over a year. This sustained change was sufficiently permanent. *See Perez*, 973 So. 2d at 1232 ("Since the condition had lasted over a year at the time of the final hearing, with no apparent end in sight, it should be deemed sufficiently permanent." (quoting *Woolf v. Woolf*, 901 So. 2d 905, 912 (Fla. 4th DCA 2005))). And without any (competent substantial) evidence to contradict that the change was permanent, the trial court abused its discretion in finding that it was not permanent. *Cf. Girard v. Girard*, 351 So. 3d 27, 29 (Fla. 4th DCA 2022) (holding there was not competent substantial evidence that the change was permanent where "[a]lthough the wife's employment ended two weeks before the hearing, the undisputed evidence was that this position was always temporary").

Also, the record does not support the trial court's finding that the change was voluntary. For this, *Wilson v. Wilson*, 37 So. 3d 877, 881 (Fla. 2d DCA 2010), guides us:

> Courts require that a change in circumstances be involuntary to ensure that the payor spouse does not deliberately avoid his support obligations. The payor spouse must act in good faith to retain income that would allow him to meet his financial obligations. To be sure, the Former Husband sold his practice to VCA. However, the realities of his practice compelled him to seek an alternative to what had become a grinding practice model. **The record supports the trial court's conclusion that business exigencies**

10

> **prompted the sale**, the consideration received was reasonable, the sale enabled the Former Husband to continue working as a veterinarian until retirement age, and the sale proceeds ensured long-term security for both the Former Wife and the Former Husband.
>
> **There is no evidence that the Former Husband manipulated his finances to deprive the Former Wife of support. Rather, the Former Husband responded to unexpected business circumstances that presented a dearth of reasonable alternatives for solutions.** The Former Husband needed to continue in practice. He was nearing retirement age and realistically could not maintain the current practice pace. The sale to VCA was a fitting solution to the dilemma.

(Emphases added and citations omitted.) Here, Former Husband was faced with untenable business exigencies caused by Covid-19. He tried to make the best of a bad situation. Even the trial court recognized that Former Husband was "between a rock and a hard place." *Cf. Fort v. Fort*, 90 So. 2d 313, 315 (Fla. 1956) (establishing a "good faith" test for reducing support alimony when the paying ex-spouse has changed employment and suffered a reduction in income); *Kinne v. Kinne*, 599 So. 2d 191, 194 (Fla. 2d DCA 1994) ("Under that good faith test, if the ex-husband who is engaged in a new type of employment with substantially reduced income did not deliberately reduce his income to avoid compliance with his alimony obligation and is acting in good faith to increase his income back toward its previous level, his alimony obligation should be reduced to be more commensurate with his current ability to pay."). We do not fault Former Husband for the course he chose. Certainly, we discern no attempt to manipulate his finances to Former Wife's detriment.

## **Conclusion**

We reverse the trial court's order denying Former Husband's amended supplemental petition to modify alimony and remand for further proceedings consistent with this opinion.

Reversed and remanded.

CASANUEVA and SILBERMAN, JJ., Concur.

_____

Opinion subject to revision prior to official publication.